# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

         **v.**                     **Civil No.** 15-2328 (FAB)

PUERTO RICO INDUSTRIAL
DEVELOPMENT COMPANY,

    **Defendant.**

---

**OPINION AND ORDER**

BESOSA, District Judge.

On September 25, 2015 the United States of America ("United States") filed a complaint against the Puerto Rico Industrial Development Company ("PRIDCO") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607 *et seq.* (Docket No. 1.) Subsequently, the United States filed an amended complaint. (Docket No. 8.) PRIDCO answered the amended complaint. (Docket No. 11.) Additionally, PRIDCO filed a third party complaint. (Docket No. 46.) The United States moved for summary judgment against PRIDCO pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") on July 14, 2016. (Docket No. 101.) PRIDCO opposed the motion for summary judgment, and requested that the Court defer resolution of this motion pursuant to Federal Rule of Civil Procedure 56(d). (Docket Nos. 116 and 117.) The United States filed a reply. (Docket

No. 127.)  For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment, and **DENIES** PRIDCO's request to defer resolution of the summary judgment motion.  Moreover, The Court further **ORDERS** the United States and PRIDCO to meet and confer with each other regarding the third party complaint, which will be addressed at the January 16, 2018 pretrial conference.

## I.  Factual Background

This matter concerns contaminated groundwater located on property belonging to PRIDCO in Maunabo, Puerto Rico (hereinafter, "property").[1]  PRIDCO is a government instrumentality of the Commonwealth of Puerto Rico, incorporated in 1942 to stimulate the formation of local firms and to attract foreign investment. (Docket No. 11 at p. 2; Docket No. 117-3 at p. 2.)  To accomplish these ends, PRIDCO maintains an infrastructure development program, and facilities for lease or sale to qualified investors. (Docket No. 117-3 at p. 2.)  The property, which PRIDCO acquired in 1964, is among these facilities.  (Docket No. 117-4 at p. 2.)

The property includes three industrial structures. (Docket No. 101-4 at p. 17.)  Between 1969 and 2015, PRIDCO leased the

---

[1] The Municipality of Maunabo identifies the property as L-283-0-06.  (Docket No. 11 at p. 2.)  PRIDCO owns a second parcel of land that is also located in Maunabo, identified as Lot-304-0-66.  (Docket No. 101-15 at p. 17.)  This second parcel of land is unrelated to the CERCLA cause of action.

property to: (1) System Engineering Labs (1969 through 1971); (2) Coulter de Puerto Rico (1972 through 1980); (3) Solar Mar of Puerto Rico (1980 through 1984); (4) Orle International Company (1986 through 1989); (5) Puerto Rico Housing Department (1989 through 1991); (6) Municipality of Maunabo (1996 through 1998); (7) Premium Fruit Company (1999 through 2003); (8) E.I.G. Aqua Pura de Puerto Rico, Inc; (9) Juan Orozco, Ltd. (date of lease not specified); and (10) Centro de Acopio Manufacturing (date of lease not specified). (Docket No. 101-15 at p. 4.)

The Puerto Rico Aqueduct and Sewer Authority ("PRASA") operates four groundwater supply wells in Maunabo, providing water to 14,000 people. (Docket No. 101-6 at p. 12.) One of the four PRASA wells is located adjacent to the southern edge of the property (hereinafter, "Maunabo well"). (Docket No. 101-14 at p. 17.)

Between 2001 and 2004, PRASA detected volatile organic compounds ("VOC"), including trichloroethylene ("TCE") and cis-1, 2-dichloroethene ("cis-1, 2-DCE"), in the tap water of its customers.[2] (Docket No. 101-3 at p. 23.) TCE and cis-1, 2-DCE are hazardous substances. Id. In 2002, PRASA discovered that groundwater from the Maunabo well contained TCE and cis-1, 2-DCE.

---

[2] TCE is a chlorinated solvent that degrades into cis-1, 2-DCE upon disposal into the environment. (Docket No. 101-6 at p. 12.)

(Docket No. 101-6 at p. 12.) PRASA installed a carbon filtration system to treat the contaminated groundwater. (Docket No. 101-2 at p. 3.) In response to the contamination, PRASA commenced sampling groundwater from the Maunabo well three times a year to verify compliance with federal and local drinking water standards.[3]
Id.

The United States Environmental Protection Agency ("EPA") and the Puerto Rico Environmental Quality Board ("EQB") are responsible for decontamination of the groundwater.[4] (Docket No. 101-6 at pp. 12—13.) The EPA confirmed that the groundwater from the Maunabo well is contaminated primarily with cis-1, 2-DCE. Id. at p. 26. After further investigation, the EPA discovered three plumes of contaminated groundwater throughout the Municipality of Maunabo. (Docket No. 101-5 at p. 171.) The three plumes are referred to as: (1) cis-1, 2-DCE, (2) PCE, and (3) 1, 1-DCE. (Docket No. 101-5 at p. 171.) The cis-1, 2-DCE plume is

---

[3] The Puerto Rico Department of Health ("PRDOH") ordered PRASA to discontinue use of the Maunabo well in 2002. (Docket No. 101-3 at p. 11.) Rather than close the Maunabo well, however, PRASA installed carbon filtration tanks. Id. According to CMD Smith, a firm hired by the EPA to study the contaminated groundwater, this system "was not always effective and [. . .] contaminated drinking water was reaching the consumers." Id.

[4] CERCLA empowers the President of the United States to "remove or arrange the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time." 42 U.S.C. § 9604(a)(1). President Ronald Reagan first delegated primary authority to implement CERCLA to the EPA pursuant to Executive Order 12580 (January 23, 1987). Section 1 of Executive Order 12580 requires the National Contingency Plan (NCP) to provide for national and regional response teams (NRTs and RRTs) to coordinate preparedness and response actions.

located below the property, "flow[ing] southwest toward [a] river, but is intercepted by [the Maunabo well]." (Docket No. 101-6 at p. 26; Docket No. 101-3 at p. 14.) The PCE plume is located south of the PRIDCO property near a former sugar mill. (Docket No. 101-4 at p. 18.) The 1, 1-DCE plume is located northwest of the property. (Docket No. 101-6 at p. 12.) Together, the three plumes comprise the Maunabo Area Groundwater Contamination Superfund Site (hereinafter, "site"). (Docket No. 101-6 at p. 12.). In 2006, the site was listed on the EPA's National Priorities List, a compilation of the most contaminated sites in the United States. (Docket No. 101-6 at p. 15.)

PRIDCO conducted an independent investigation of the contaminated groundwater beneath the property. GeoEnviroTech, the firm hired by PRIDCO to study the cis—1, 2-DCE plume, confirmed that the groundwater below the property contained hazardous substances. (Docket No. 101-14 at pp. 8, 19.)

The EPA incurred response costs related to decontamination efforts regarding the cis-1, 2-DCE plume. These efforts have included an investigation and the issuance of a Record of Decision ("ROD"). (Docket No. 101-2 at p. 3.) The ROD sets forth a remedy for the site, including air sparging for the cis-1, 2-DCE plume and monitored natural attenuation for the PCE and 1, 1-DCE plumes. (Docket No. 101-6 at p. 75.) The United States seeks reimbursement

from PRIDCO "for all response costs, including enforcement costs,
incurred by the EPA in connection" with efforts to decontaminate
the cis-1, 2-DCE plume located below the PRIDCO property. (Docket
No. 8 at p. 9.)

## II.  Motion to Defer Summary Judgment

PRIDCO moves for this Court to defer resolution of the summary
judgment motion pursuant to Rule 56(d). (Docket No. 116 at p. 40.)
Rule 56(d) "allows a summary judgment motion to be denied or the
hearing on the motion to be continued, if the nonmoving party has
not had an opportunity to make full discovery." Celotex Corp. v.
Catrett, 477 U.S. 317, 326 (1986). Deferment of summary judgment
adjudication is appropriate if PRIDCO "shows by affidavit or
declaration that, for specified reasons, it cannot present facts
essential to justify its opposition." Fed. R. Civ. P. 56(d); see
In Re PHC Shareholder Litig., 762 F.3d 138, 144 (1st Cir. 2014)
(holding that Rule 56(d) motions should be granted freely early in
the litigation).

PRIDCO premises its Rule 56(d) motion on the contested source
of contamination at the property. Outstanding discovery requests,
PRIDCO argues, are "extremely relevant to PRIDCO's defense" and
"may hold the key to alternative theories as to why there is
contamination at the groundwater and not at the surface soil level,

and what may be the source of the contamination." (Docket No. 116 at p. 45.)

The Court recognizes that PRDICO may have yet to receive relevant discovery. At this stage, however, the issue before the Court is one of liability. The Court granted the United States' motion to trifurcate this matter into a Liability Phase ("Phase I"), a Cost Phase ("Phase II"), and a Contribution Phase ("Phase III"). (Docket No. 85.) As discussed below, identifying the source of contamination is immaterial to the *prima facie* liability analysis. See <u>Robertshaw Controls Co. v. Watts Regulator Co.</u>, 807 F. Supp. 144, 153 (D. Me. 1992) ("Congress specifically rejected including a causation requirement in Section [107]."). Consequently, the reason provided by PRIDCO to defer summary judgment as to liability is inapposite. The parties will exchange discovery pertaining to the source of contamination during Phase II and Phase III. Accordingly, PRIDCO's Rule 56(d) motion is **DENIED**.

## III. Summary Judgment Motion

### A.    Standard of Review

Summary judgment serves to assess the evidence and determine if there is a genuine need for trial. <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990). The Court may grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it has the potential to "affect the outcome of the suit under the governing law." Id. A dispute is "genuine" when it "could be resolved in favor of either party." Calero-Cerezo v. U.S. Dep't. of Justice, 355 F.3d 6, 19 (1st Cir. 2004). The party moving for summary judgment has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex, 477 U.S. at 323; Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Id. (citing Fed. R. Civ. P. 56(c)). Once a properly supported motion has been presented, the burden shifts to the non-moving party "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted).

It is well-settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Consequently, "a party opposing summary judgment must 'present definite, competent evidence to

rebut the motion.'" Maldonado-Denis, 23 F.3d at 581 (internal

citation omitted). In making this assessment, the Court must

examine the entire record in the light most favorable to the

nonmoving party and draw all reasonable inferences in its favor.

Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir.

2011).

The sole issue before the Court is whether PRIDCO is

liable pursuant to CERCLA. (Docket No. 101.) Namely, the motion

for summary judgment requests only that the Court find PRIDCO

"liable for the cleanup costs related to the remedy selected to

address the area of contaminated groundwater at, and extending

from, the Property." (Docket No. 101 at p. 7.) The cleanup costs

associated with the cis-1, 2-DCE plume and allocation of these

costs will be determined in Phase II and Phase III, respectively.

Summary judgment is particularly suitable in the CERCLA

context because dispositive decisions "may be rendered as to

liability even if there is a genuine issue as to [. . .] damages."

United States v. Domenic Lombardi Realty, Inc., Case No. 98-591,

2001 U.S. Dist. LEXIS 24645, at *14 (D.R.I. Jan. 25, 2001)

(citation omitted); see United States v. Barkman, Case No. 96-

6395, 1998 U.S. Dist. LEXIS, at *32-33 (E.D. Pa. Dec. 17, 1998)

(granting summary judgment because the United States "satisfied

all elements to establish a *prima facie* case of liability under

[CERCLA] and the Defendants have failed to establish any defense to liability"). An assignment of liability, the purpose of Phase I in this case, is an appropriate precursor to determining the amount and allocation of cleanup costs among responsible parties. See United States v. Alcan Aluminum Corp., 990 F. 2d 711, 720 (3d Cir. 1992); Acushnet Co. v. Mohasco, 191 F. 3d 69, 82 (1st Cir. 1999) ("district courts have considerable latitude to deal with issues of liability and apportionment in the order they see fit to bring the proceedings to a just and speedy conclusion.").

   **B.   Legislative Background**

   Congress drafted CERCLA to address the release or threatened release of hazardous substances into the environment.[5] 42 U.S.C. § 9601 *et seq.* CERCLA permits the United States to allocate funds from a "Hazardous Substance Superfund" to finance cleanup efforts. 26 U.S.C. § 9507. The United States may seek to replenish the funds of the Hazardous Substance Superfund pursuant to section 107 of CERCLA by bringing suit against, among others, "any person who at the time of disposal of any hazardous substances owned or operated any facility at which hazardous substances were disposed of." 42 U.S.C. § 9607(a); United States v. Bestfoods, 524 U.S. 51, 55 (1998). The statutory scheme set forth in CERCLA

---

[5] Jurisdiction exists in this case pursuant to 28 U.S.C. § 1331 because the United States seeks relief pursuant to CERCLA, 42 U.S.C. § 9607, a federal statute.

promotes the expeditious remediation at contaminated sites, adequate compensation to public coffers, and the imposition of accountability. United States v. Davis, 261 F.3d 1, 26-27 (1st Cir. 2001). Indeed, the essential purpose of CERCLA is to ensure that "those responsible for problems caused by the disposal of chemical poisons shoulder the costs and responsibility for remedying the harmful conditions they created." John S. Boyd Co. v. Boston Gas Co., 992 F.2d 402, 405 (1st Cir. 1993) (quoting Dedham Water Co. v. Cumberland Farms Dairy, Inc., 805 F.2d 1074, 1081 (1st Cir. 1986)).

Courts apply and interpret CERCLA expansively in accordance with these "beneficial legislative purposes." Dedham Water Co., 805 F. 2d. at 1081 (citation omitted). Consistent with the expansive scope of CERCLA, the statute "sketches the contours of a strict liability regime." Acushnet Co., 191 F.3d at 74 (1st Cir. 1999); see United States v. Monsanto, 858 F. 2d. 160, 161 (4th Cir. 1988) ("We agree with the overwhelming body of precedent that has interpreted [CERCLA] as establishing a strict liability scheme."). CERCLA contains no causation element. Prisco v. A & D Carting Corp., 168 F. 3d 593, 606 (2d Cir. 1999) ("No causation is needed, however, to establish liability under CERCLA.") (internal citation omitted). Consequently, "CERCLA appears to impose liability on every generator of hazardous waste, although

that generator could not, on its own, have caused any environmental harm." United States v. Rohm & Hass Co., 939 F. Supp. 1142, 1155 (D.N.J. 1996) (holding defendants liable pursuant to CERCLA as generators of hazardous substances).

    With this framework in mind, the Court will address whether PRIDCO is *prima facie* liable for the cleanup costs in connection with the cis-1, 2-DCE plume before deciding whether the affirmative defenses and exemptions to liability raised by PRIDCO survive the United States' summary judgment motion.

### C.    The United States Has Established *Prima Facie* Liability Pursuant to Section 107 of CERCLA

    The United States predicates its complaint on section 107 of CERCLA. (Docket No. 8.) To prevail on its summary judgment motion, the United States must establish that there is no genuine issue of material fact that: (1) the property is a facility pursuant to section 107(b) of CERCLA, (2) PRIDCO falls within one of four categories of covered persons pursuant to section 107(a); (3) a release or threatened release occurred on the property; and (4) the release or threatened release caused the United States to incur response costs that are not inconsistent

with the National Contingency Plan.[6]   42 U.S.C. § 107; <u>Acushnet</u>
<u>Co.</u>, 191 F.3d at 75 ("By and large, a person who falls within one
of the four categories defined in [section 107] is exposed to
CERCLA liability.").   Accordingly, the United States need only
satisfy four elements to establish *prima facie* liability.   <u>See</u>
<u>Dedham Water Co. v. Cumberland Farms Diary</u>, 889 F. 2d 1146, 1150
(1st Cir. 1989) ("There are four elements necessary for a *prima*
*facie* case in a private-party lawsuit under CERCLA."); <u>O'Neil</u>, 682
F. Supp. at 718 n.2 ("[I]f the plaintiff is able to prove at trial
the statutory elements of section 107(a)(3), [defendant] may be
held liable without proof of knowledge or intent.").

Liability pursuant to CERCLA "may be inferred from the
totality of the circumstances [and] it need not be proven by direct
evidence."   <u>Members of the Beede Site Group v. Fed. Home Loan</u>
<u>Mortg. Corp.</u>, 968 F. Supp. 2d 455, 460 (D.N.H. 2013); <u>see also</u> <u>PCS</u>
<u>Nitrogen Inc. v. Ashley II of Charleston Co.</u>, 768 F. 3d 161, 177
(4th Cir. 2013) ("To be sure, PCS presented no direct evidence
that Holcombe and Fair moved or dispersed any contaminated soils.

---

[6] The National Contingency Plan provides that cleanup measures must be cost effective, <u>O'Neil</u>, 682 F. Supp. 706, 728 (D.R.I. 1988), are prescribed by section 105 of CERCLA, 42 U.S.C. § 9605, and are published at 40 C.F.R. 300 (1987).   The burden to show that the United States' response costs are inconsistent with the National Contingency Plan rests with PRIDCO.   <u>See</u> <u>United</u> <u>States v. Mottolo</u>, 695 F. Supp. 615, 630 (D.N.H. 1988) ("Defendants have the burden to show that governmental response costs are inconsistent with [National Contingency Plan].").

However, CERCLA does not require a smoking gun."). The Court is satisfied that there is no genuine issue of material fact that PRIDCO is *prima facie* liable pursuant to section 107 of CERCLA.

### 1.    The Property is a Facility

The first element of a *prima facie* case pursuant to section 107 requires that the United States demonstrate that the property is a facility. A facility is "any site or area where a hazardous substance has been deposited, stored, disposed of, placed, or otherwise come to be located." 42 U.S.C. § 101. Cis-1, 2-DCE and TCE, the two compounds located on the property, are classified as "hazardous substances" pursuant to section 101(4) of CERCLA. See Davis, 31 F. Supp. 2d at 45 (holding defendant liable pursuant to CERCLA for the cleanup of groundwater contaminated with TCE). Indeed, PRIDCO concedes that the property is a facility, stating that "[the property] does comply with the facility definition inasmuch as the hazardous substance has 'come to be located' in the groundwater beneath the property surface." (Docket No. 116 at p. 19.) Consequently, the Court concludes, and the parties concur, that no genuine issue of material fact exists regarding the status of the property as a facility.

### 2.    PRIDCO is a Potentially Responsible Party

CERCLA identifies four classes of covered persons, or potentially responsible parties ("PRP")s: (1) the current owner

or operator of a facility; (2) the owner or operator of a facility

at the time it became contaminated; (3) any person who arranges

for transport or disposal of hazardous substances; and (4) any

person who accepts hazardous substances for the purpose of

transport or disposal.  42 U.S.C.  107(a); see John S. Boyd Co.

992 F. 2d at 101 (1st Cir. 1993) ("Under CERCLA, four parties may

be responsible for the costs of an environmental cleanup.").  In

essence, the extent to which a party is a PRP depends on its

relationship to a facility.  United States v. Bestfoods, 524

U.S. 51, 68 (1998).

PRIDCO denies that it falls within any of the four

categories of PRPs.  The United States, on the contrary, argues

that because PRIDCO is an "owner," PRIDCO is a PRP as a matter of

law.  (Docket No. 101 at p. 11.)  Congress defined, rather

ambiguously, the term "owner" within the context of CERCLA as "any

person owning or operating" a facility.  42 U.S.C.

§ 101(20)(A)(ii); Exxon Corp. v. Hunt, 475 U.S. 355, 363 (CERCLA

"unfortunately is not a model of legislative draftsmanship").

PRIDCO admits that it is the "titular owner" of the property, but

denies that it is an "owner" within the meaning of CERCLA.  (Docket

No. 117-9 at p. 1.)  According to PRIDCO, the United States failed

to establish that PRDICO participated in the management of the

property.[7]  This failure, PRIDCO asserts, negates its status as an

owner.  (Docket No. 116 at p. 24.)  PRIDCO's understanding of

ownership is, however, misguided.

     In Chevron Mining Inc. v. United States, the Tenth

Circuit Court of Appeals rejected contentions identical to those

presented by PRIDCO.  863 F.3d 1261 (10th Cir. 2017).  In Chevron

Mining, the United States owned national forest lands in New

Mexico.  Id.  For over a century, Chevron Mining Inc. ("Chevron")

mined the land, generating significant amounts of hazardous

substances.  Id. at 1256-66.  After accepting liability for the

release of hazardous substances, Chevron sued the United States

pursuant to section 107 of CERCLA.  Id.  Chevron asserted that the

United States, as owner of the property, was required to contribute

to the cleanup costs associated with the CERCLA action.  Id.  The

United States, nonetheless, argued that "bare legal title is

insufficient to trigger owner liability." Id. at 1275.  The Tenth

Circuit Court of Appeals disagreed, holding that "CERCLA contains

neither an express nor an implied exception to owner liability for

holders of bare title."  Id.

---

[7] Before filing for summary judgment, PRIDCO requested leave to file an amended
third party complaint.  (Docket No. 77.)  In denying PRIDCO's request, the Court
held that "it is uncontested that defendant PRIDCO is the owner of the facility."
(Docket No. 85 at p. 2.)  PRIDCO contends that this order has no bearing on
whether PRIDCO is liable pursuant to CERCLA.  (Docket No. 116 at p. 23.)  The
Court need not rely on past orders in concluding that PRIDCO is the owner of
the property within the meaning of CERCLA.

        Just as the United States argued in <u>Chevron Mining</u> <u>Inc.</u>, PRIDCO asserts that it is immune from liability pursuant to CERCLA because it "merely holds bare title" to the property. (Docket No. 116 at p. 49.)  PRIDCO's argument is unconvincing because it cites no authority to support the proposition that bare legal title, without more, is insufficient to trigger liability pursuant to section 107.  Indeed, control or management of the property is not a prerequisite for *prima facie* liability.  <u>See</u> <u>United States v. 175 Inwood Assocs. LLP</u>, 330 F. Supp. 2d 213, 222 (E.D.N.Y. 2004) ("[A]n individual may be held liable as an 'owner or operator' even if he did not actually participate in the management of the site or contribute to the release of hazardous substances.") (citing <u>New York v. Shore Realty Corp.</u>, 759 F.2d 1032, 1044-5 (2d Cir. 1985)).  Because the record makes clear that there is no genuine issue of material fact that PRIDCO owns the property, the Court holds that PRIDCO is a PRP as a matter of law.

    **3.    A Release of Hazardous Substances Occurred on the
           Property**

        The third element of a *prima facie* case pursuant to CERCLA concerns the release or threatened release of hazardous substances.  CERCLA defines "release" as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment

(including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contamination)." 42 U.S.C. § 9601(22). Courts construe the term "release" broadly. Dedham Water Co. v. Cumberland Farms Dairy, 889 F.2d 1146, 1152 (1st Cir. 1989).

PRIDCO argues that "[i]f the Defendant's property is not the source of contamination, then the hazardous substances were not 'released.'" (Docket No. 116 at p. 3.) Indeed, PRIDCO raises this argument repeatedly throughout its opposition to the United States' motion for summary judgment. (Docket No. 116 at pp. 6–16, 27–34.) PRIDCO postulates that because "contamination was not detected in the surface soils at the Property," the groundwater containing hazardous substances below the property cannot serve as the basis for liability pursuant to CERCLA." Id. at p. 7. At bottom, PRIDCO places on the United States the burden of establishing that PRIDCO caused the release of hazardous substances on the property.

CERCLA is a strict liability statute, holding PRPs responsible for the release or threatened release of hazardous substances regardless of fault. Courts universally recognize that causation is not an element of a prima facie case pursuant to section 107 of CERCLA. See United States v. Atl. Research Corp., 551 U.S. 128, 136 (2007) ("But even parties not responsible for

contamination may fall within the broad definitions of [PRP's] in
[section 107]"); United States v. JG-24, Inc., 331 F. Supp. 2d.
14, 62 (D.P.R. 2004) (Acosta, J.) ("[S]ince CERCLA is a strict
liability statute, Section 107(a)(1) of CERCLA, 42 U.S.C. §
9607(a)(1), imposes liability on current owners of a facility
regardless of when disposal occurred and regardless of
causation."); Gen. Elec. Co. v. Litton Indus. Automation Sys., 920
F. 2d 1415, 1417-18 (8th Cir. 1990) (holding that in determining
liability, courts only inquire whether there has been a release or
threatened release of hazardous substances); Ascon Properties,
Inc. v. Mobil Oil Co., 866 F. 2d 1149, 1153 (9th Cir. 1998) ("We
hold that a plaintiff need not allege the particular manner in
which a release or threatened release has occurred in order to
make out a *prima facie* claim under section 107(a) of CERCLA.");
City of Wichita v. Trs. of the Apco Oil Corp. Liquidating Trust,
306. F. Supp. 2d. 1040, 1049 (D. Kan. 2003) ("Because § 107 imposes
strict liability upon [potentially responsible parties] regardless
of fault, causation is not part of the liability inquiry.").
Whether PRIDCO caused the release if hazardous substances at the
property, thus, is irrelevant to the *prima facie* liability
analysis.

        The United States argues that the presence of
hazardous substances in the groundwater below the property

satisfies the release or threatened release element. (Docket No. 101 at pp. 12-14.) The Court agrees. The mere presence of cis-1, 2-DCE on the PRIDCO property suffices to establish the release element of a CERCLA claim. See United States v. Lombardi Realty Inc., 204 F. Supp. 2d 318, 330 (D.R.I. 2002) (holding that "the presence of PCB-contaminated soil at the Site constitutes a 'release.'"); see also Gould Elecs. Inc. v. Livingston County Rd. Comm'n., Case No. 09-12633, 2012 U.S. Dist. LEXIS 167347 (E.D. Mich., May 25, 2012) ("[T]he very presence of TCE on [defendant's] property, which is undisputed, illustrates that a release of that substance has occurred because the presence of TCE in the soils and/or groundwater under [defendant's] property indicates a 'leaching' of that substance."). Furthermore, the United States has no obligation to prove that the hazardous wastes emanated from the property in order to establish *prima facie* liability. See Asarco LLC v. NL Indus., 105 F. Supp. 3d 1015, 1031 (E.D. Mo. 2015) (rejecting requirement of "tracing" or "fingerprinting" hazardous substances to establish *prima facie* liability).

PRIDCO attempts to distinguish the facts of City of Wichita from those of this case. Docket No. 116 at p. 12; 306 F. Supp. 2d 1040. In City of Wichita, hazardous substances such as TCE, DCE, and perchloroethylene ("PCE") were discovered in the groundwater throughout Wichita. 306 F. Supp. 2d at 1046. At

trial, the parties submitted detailed and complex testimony regarding the groundwater. Id. Ultimately, the court concluded that because the contaminants "are not found naturally in the soil or groundwater, and because they were found at each facility, the inevitable conclusion is that releases occurred." Id.

According to PRIDCO, City of Wichita is inapposite because that case involved an extensive level of contamination. (Docket No. 116 at p. 12.) PRIDCO fails to cite any statute or precedent requiring a minimum level of contamination, or degree of culpability, before prima facie liability attaches to responsible parties. In fact, courts have expressly rejected such a proposition. See United States v. DiBiase Salem Realty Trust, 1993 U.S. Dist. LEXIS 20031 (D. Mass. Nov. 19, 1993) ("For the purposes of liability, the statute does not generally require any threshold quantity or concentration of hazardous substance, regardless of how low the percentage may be.") (citing B.F. Goodrich Co. v. Murtha, 958 F. 2d 1191, 1200 (2d Cir. 1992)).

PRDICO concedes that the cis-1, 2-DCE plume is located below the property. (Docket No. 11 at p. 2.) PRIDCO, contends, however, that "by Law, [the groundwater] does not and cannot belong to PRIDCO." (Docket No. 11 at p. 2.) PRIDCO cites no authority to support this legal conclusion, which is contrary to the overwhelming weight of authority. Contaminated groundwater

may serve, and has frequently served, as the basis for liability

pursuant to CERCLA.    See S. Cal. Water Co. v. Aeroject-General

Corp., Case No. 02-6340, 2003 U.S. Dist. LEXIS 26534, at *21 (C.D.

Cal. Apr. 1, 2003) (rejecting argument that plaintiff "cannot be

the 'owner' because it does not own the groundwater beneath its

property," and finding that allegations that plaintiff owned wells

where hazardous substances found could support a finding that it

is a PRP) (internal citation omitted); JG-24, Inc., 331 F. Supp.

2d. at 14 ((holding defendants liable pursuant to CERCLA for

contaminated groundwater); One Wheeler Rd. Assocs. V. Foxboro Co.,

843 F. Supp. 792 (D. Mass. 1994) (finding former property owner

liable for response and remediation costs associated with

contaminated groundwater).    Furthermore, Congress specifically

included "groundwater" as within the scope of CERCLA.  42 U.S.C.

§ 9601(12) (including "groundwater [. . .] within the United

States" within the definition of "environment.").

          In sum, based on the undisputed presence of cis-1,

2-DCE on the property, there is no genuine issue of material fact

as to whether the United States may satisfy the release element of

its *prima facie* claim.

          **4.   The United States Incurred Response Costs**

          The final element of a *prima facie* claim pursuant

to section 107 requires the United States to establish that a

release or threatened release of hazardous substances "cause[d] the incurrence of response costs" that are "not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4). To satisfy this element, the "United States need only show that it has incurred some costs." United States v. Amtreco, Inc., 809 F. Supp. 959, 965 (M.D. Ga. 1992); United States v. Dominic Lombardi Realty Inc., Case No. 98-5912001, 2001 U.S. Dist. LEXIS 24645, at *66 (D.R.I. Jan. 25, 2001) ("[A] determination of the amount of recoverable costs is not an element of liability.").

Luis Santos, a Remedial Project Manager for the Caribbean Environmental Protection Division for the EPA, declared under penalty of perjury that the "EPA has incurred response costs associated with its investigation of the contaminated groundwater at the Property." (Docket No. 101-2 at p. 3.) PRIDCO failed to "admit, deny, or qualify the facts supporting [the United States] motion for summary judgment" regarding response costs in

contravention of Local Rule 56(c).[8]  According to PRIDCO, because "the remedy of deferral is sought under Rule 56(d), no counter statement is made as to [the response costs]."   The assertion that the United States incurred response costs is supported by record citations, and is not "properly controverted" by PRIDCO.[9] Accordingly, the Court deems the United States' assertion as to response costs to be admitted by PRIDCO, and consequently concludes that there is no genuine issue of material fact as to the final element of the *prima facie* CERCLA claim.

---

[8] The First Circuit Court of Appeals has "repeatedly [. . .] emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is—and what is not—genuinely controverted.'" Id. (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 sets out the requirements for both the movant and the party opposing summary judgment; it "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Market Inv. v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008); Loc. Rule 56. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment, such as PRIDCO, must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56(c). The moving party may reply and admit, deny, or qualify the opponent's newly-stated facts, again in a separate statement and by reference to each numbered paragraph. Loc. Rule 56(d). Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 130 (1st Cir. 2010). Due to the importance of this function to the summary judgment process, "litigants ignore [these rules] at their peril." Hernandez, 486 F.3d at 7.

[9] According to the ROD, the total estimated remedy cost for the site, including two plumes of groundwater not in controversy, is $4,995,273. (Docket No. 101-6 at p. 45.)

Because there are no genuine issues of material fact regarding the four elements of a *prima facie* CERCLA claim, summary judgment as to PRIDCO's liability for the response costs associated with the cis-1, 2-DCE plume is **GRANTED.**

## IV.  Affirmative Defenses and Exemptions to CERCLA Liability

CERCLA recognizes only the following statutory affirmative defenses:  "(1) an act of God;[10] (2) an act of war; (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurred in connection with a contractual relationship, existing directly or indirectly, with the defendant . . . (the "innocent landowner defense"); or (4) any combination of [these three defenses]."    42 U.S.C. § 9607(b).   In addition to the defenses set forth at 42 U.S.C. § 9607(b), CERCLA also exempts from liability defendants who establish that:   (1) hazardous substances migrated to their property from a contiguous property (hereinafter, the "contiguous property defense"), 42 U.S.C. § 9607(q), or (2) they are secured creditors who hold indicia of ownership merely to protect a security interest in the contaminated property (hereinafter, the "secured creditor exemption"). 42 U.S.C. § 9601(20)(E).

---

[10] An act of God is an "unanticipated grave natural disaster or other natural phenomenon of an exceptional, inevitable, and irresistible character, the effects of which could not have been prevented or avoided by the exercise of due care or foresight."  42 U.S.C. 9601(1).

In this case, PRIDCO raised twelve affirmative defenses in its answer to the amended complaint. (Docket No. 11.) The United States moved to strike six of the twelve affirmative defenses. (Docket No. 22.) The Court granted the motion to strike, in part, because PRIDCO failed to oppose the motion within the allocated time to do so.[11] (Docket No. 25.) Accordingly, the affirmative defenses that remain are: (1) the secured creditor exemption, (2) the contiguous property defense, (3) a third party caused the contamination, (4) an act of God caused the contamination, (5) the innocent landowner defense, and (6) what PRIDCO calls the "divisibility of harm defense" in its effort to disclaim liability for two of the three contaminated plumes of groundwater located beyond its property.[12] (Docket Nos. 11 and 25.)

Nothing in the record suggests that an act of God caused the contamination giving rise to this litigation. Furthermore, PRIDCO

---

[11] The following affirmative defenses were stricken: (1) the complaint failed to state a cause of action upon which relief may be granted, (2) an indispensable party is absent from the litigation, (3) PRIDCO does not own the plumes of contaminated groundwater, (4) the *de micromis* defense shields PRIDCO from liability, (5) the re-allegation of all defenses previously alleged and (6) the right to supplement or amend the answer to raise additional affirmative defenses. (Docket Nos. 11, 22 and 25.)

[12] The divisibility of harm defense is immaterial because the United States seeks only reimbursement "for costs related to the remedy selected to address the area of contaminated groundwater at, and extending from, the Property." (Docket No. 101 at p. 7.) The United States is not requesting reimbursement for costs in connection with the decontamination of the two plumes of groundwater located beyond the property. Accordingly, the Court deems that PRIDCO's "divisibility of harm" defense is irrelevant.

makes no reference to an "act of God" defense in opposing the United States' motion for summary judgment. Accordingly, the Court deems that PRIDCO has waived this defense, and **GRANTS** summary judgment in favor of the United States as to the act of God defense. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (finding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Having determined that PRIDCO's act of God defense is waived, and that its divisibility of harm defense is immaterial, the Court will first address the propriety of granting summary judgment as to the remaining causation-based defenses: the third party, innocent landowner, and contiguous property owner defenses. The Court will then determine whether summary judgment is warranted as to the secured creditor exemption.

### A. PRIDCO'S Causation-Based Defenses

PRIDCO's causation-based defenses each impose on PRIDCO the burden of proving by a preponderance of the evidence that an unrelated party was the sole cause of the release of hazardous substances. See e.g., Mottolo, 695 F. Supp. At 626 ("Therefore, government agencies could not be the sole cause of the release, and the third party defense is unavailable to [defendant]."); United States v. 150 Acres of Land, 204 F.3d 698, 704-705 (6th

Cir. 2000) (holding that proof regarding whether a third party was the sole cause of the release is dispositive concerning the innocent landowner defense); Diamond X Ranch LLC v. Alt Richfield Co., 2017 Dist. LEXIS 160845 (D. Nev. Spr. 29, 2017) (holding that the "third party and contiguous owner defenses are not available to Diamond X or Park Livestock" because "this defense also relies on Diamond X not causing or contributing to the release of the hazardous substances into the Property").

### 1. PRIDCO's Third Party and Innocent Landowner Defenses

To invoke the third party defense, PRIDCO must establish by a preponderance of the evidence that the release of hazardous substances was due "solely" to "an act or omission of a third party other than an employee or agent of [PRIDCO], or than one whose act or omission occurs in connection with a contractual relationship" and that: (1) the contamination occurred prior to PRIDCO's purchase of the property, (2) PRIDCO had "no reason to know" that the property was contaminated, (3) PRIDCO "took all appropriate inquiry into the previous ownership and uses of the property consistent with good commercial or customary practice" in an effort to minimize liability, and (4) once the contamination was discovered, PRIDCO exercised due care regarding the hazardous substances. 42 U.S.C. § 9607(b)(3); 42 U.S.C. § 9601(35)(A)-(B).

        The innocent landowner defense is an iteration of
the third party defense. See Diamond X Ranch, 2017 U.S. Dist. LEXIS
160845, at *55 (observing that "the third party defense" is "also
known as the innocent landowner defense"); United States v. A & N
Cleaners & Launderers, 854 F. Supp. 229, 238 (S.D.N.Y. 1994)
(holding that "the Innocent Landowner Defense" is a "special case
of the Third Party Defense").  This defense shields from liability
landowners who "innocently and in good faith, purchase property
without knowledge that a predecessor in the chain of title had
allowed hazardous substances to be disposed on the property."
Domenic Lombardi Reality, 290 F. Supp. 2d ar 208 (citation
omitted); United States v. Serafini, 706 F. Supp 346, 353 (M.D.
Pa. 1988) ("Landowners cannot avail themselves of the innocent
purchaser defense by closing their eyes to hazardous waste
problems."); United States v. 150 Acres of Land, 204 F.3d 698,
704-705 (6th Cir. 2000) (rejecting defendant's innocent landowner
defense because third party's contamination was not the sole cause
of the release).

        PRIDCO asserts that the third party and innocent
landowner defenses are applicable because the United States "does
not have any physical or hard evidence to demonstrate that the
contamination in the cis-1, 2-DCE plume was caused by none other
than [PRIDCO]." (Docket No. 116 at p. 36.)  It is apparent to the

Court that questions regarding the source and the date of the
contamination remain.  The United States acknowledges that no
hazardous substances were detected within the surface soil.
(Docket No. 101 at p. 8.)  It posits that tropical conditions of
Puerto Rico may have caused hazardous substances to "either
volatize in the high temperatures or dissolve into percolating
rain water and be carried into the groundwater, essentially washing
the oil of residual contaminants."  Id. at p. 13.  At the behest
of the EPA, Raúl Colón, P.E., P.H. ("Colón"), of Caribe
Environmental Services, prepared a Final Remedial Investigation
Report and Final Feasibility Study Report concerning the Maunabo
groundwater contamination in 2012.  (Docket No. 101-16 a p. 2.)
Colón concluded that "the data collected by the EPA during the
RI/FS process . . . is not sufficient to make a determination that
the former Puerto Rico Beverage (PRB) site is a source area of the
detected chlorinated solvents."  Id.  Concerning the date of the
contamination, Colón further stated that "the PRB parcel does not
appear to have been a former source of groundwater contamination
detected at the area."  Id. at p. 3.

        Based on the record before the Court, it would be
inappropriate at this juncture to foreclose PRIDCO from asserting
the third party and innocent landowner defenses.  This is
particularly so because discovery is not yet complete, and further

factual development as to the cause of the release is necessary before the Court may determine whether summary judgment is justified as to these defenses.[13]  The Court will allow experts from both parties to present additional information as to how the hazardous substances came to be on the property.  Once discovery is complete, the United States may renew its motion for summary judgment as to these defenses.  At this time, however, the Court **DENIES** the United States' motion for summary judgment as to the third party and innocent landowner defenses.  See <u>Cal. Dep't. of Toxic Substances Control v. Farley</u>, No. C 05-3150 PJH, 2006 U.S. Dist. LEXIS 78607, at *21-22 (N.D. Cal. Oct. 17, 2006) (granting plaintiff's motion for summary judgment regarding *prima facie* liability pursuant to CERCLA, but denying summary judgment concerning the innocent landowner defense).

### 2.  PRIDCO's Contiguous Property Owner Defense

The contiguous property owner defense insulates from liability landowners who "did not cause, contribute, or consent to the release or threatened release" of hazardous substances that have spilled onto their property from contiguous property with which the landowner is unaffiliated.[14]  42 U.S.C.

---

[13] The Court granted the parties' joint motion to stay discovery pending disposition of the summary judgment motion.  (Docket No. 129.)

[14] Aside from requiring that PRIDCO demonstrate that liable parties are unaffiliated with PRIDCO, the contiguous property owner defense requires that PRIDCO establish that it took remedial measures after discovery of the

9607(q)(1)(A)(i); <u>Wilson Rd. Dev. Corp. v. Fronabarger Concreters</u>,

Inc., 971 F. Supp. 2d 896, 913 (E.D. Mo. 2013).  PRIDCO sets forth

the same causation-based arguments regarding the applicability of

the contiguous property owner defense, asserting the need for

further inquiry with respect to the source and date of the

contamination.  (Docket No. 116 at p. 36.)  For the reasons

discussed above, the Court agrees that additional factual

development is necessary before ruling on the propriety of granting

summary judgment as to the contiguous property owner defense.  <u>See</u>

<u>supra</u> Part IV(A).  After the completion of discovery, the United

States may renew its motion seeking summary judgment as to the

contiguous property owner defense.  At this time, however, the

Court cannot conclude that there are no genuine issues of material

fact as to the whether PRIDCO may assert this defense validly.

Accordingly, to the extent that the United States has moved for

summary judgment as to the contiguous property owner defense, the

motion is **DENIED.**

### B.  Secured Creditor Exemption

The secured creditor exemption cannot shield PRIDCO from

liability because there is no genuine dispute that PRIDCO acquired

and maintained the Maunabo property to promote economic

---

contaminated groundwater, such as not "imped[ing] the effectiveness or integrity
of any institutional control employed in connection with a response action."
42 U.S.C. § 9607(q)(A)(v)(II).

development in Puerto Rico rather than to secure a property interest. Section 101(20)(E)(i) of CERCLA ("Section 101") excludes from the definition of owner "a person that is a lender that, without participating in the management of a vessel or facility, holds indicia of ownership primarily to protect his security interest of the person in the vessel or facility." 43 U.S.C. § 9607(20)((E). The purpose of this exclusion from liability (known as the "secured creditor exemption") to the otherwise strict liability regime of CERCLA is "to shield from lability those 'owners' who are in essence lenders holding title to the property as security for the debt."[15] Waterville Indus., Inc. v. Finance Auth. of Me., 984 F.2d 549, 552 (1st Cir. 1993). Banks possessing mortgages only to secure loan payments, for example, represent the entities that Congress intended to exempt from liability. Id. at 552 (citing In re Bergose Metal Corp., 910 F.2d 668 (9th Cir. 1990) (finding that a municipal corporation issuing revenue bonds to provide funds for land acquisition in a sale-and-lease back arrangement qualified for the secured interest exception); see e.g., United States v. Maryland Bank & Trust, 632 F. Supp. 573 (D.

---

[15] Security interests include "a right under a mortgage, deed of trust, assignment, judgment lien, pledge, security agreement, or lease and any other right accruing to a person to secure the repayment of money, the performance of a duty, or any other obligation to a nonaffiliated person." 42 U.S.C. § 9601(20)(G)(vi).

Md. 1986) (holding that a security interest existing solely as the result of a loan vesting the interest holder with an indicia of ownership was not a basis for CERCLA liability); Guidice v. BFK Electroplating & Mtg. Co., 732 F. Supp. 556 (D. Nev. 2017)(Not holding a mortgagee bank liable for contamination occurring before its purchase of metal polishing facility through foreclosure pursuant to the secured creditor exemption); Ashland Oil, Inc. v. Sonford Prods. Corp., 810 F. Supp. 36 (D. Minn. 1993) (finding no liability where industrial lender provided loan to manufacturer that subsequently declared bankruptcy, holding title to manufacturer's abandoned assets for less than a month).

PRIDCO invokes the secured creditor exemption on the basis that it holds only an "indicia of ownership." Id. PRIDCO shoulders the burden of establishing that this exemption is applicable. United States v. Fleet Factors Corp., 901 F.2d 1550l, 1556 (11th Cir. 1990). Fundamentally, two inquiries govern the secured creditor exemption analysis: (1) whether PRIDCO "holds indicia of ownership primarily to protect its security interest in the [property]" and (2) whether PRIDCO participated "in the management of the {property]." In re Bergose Metal Corp., 910 F.2d 668, 671 (9th Cir. 1990).

PRIDCO cites Waterville Industries, Inc. v. Finance Authority of Maine to support its status as a exempted secured

creditor.  Docket No. 116 at p. 26; citing 984 F.2d 549 (1st Cir.

1993).   In Waterville, the First Circuit Court of Appeals held

that  the  Finance  Authority  of  Maine  ("FAME"),  a  state

instrumentality, qualified for the secured creditor exemption.

Id.  The court held that FAME received only "nominal title" to

contaminated property for the purpose of securing payments from a

debtor that had defaulted on loan obligations.  Id. at 552 (granting

secured creditor exemption to government entity that held a "title

typical  of  the  lender  in  a  lease  financing  transaction").

Additionally,  FAME  promptly  divested  itself  of  "unwelcome

ownership"  once  its  relationship  with  the  controlling  lease

arrangement ended.   Id. at 553.

     The circumstances of this case differ substantially from

those of Waterville.   Whereas FAME held title to secure loan

payments, PRIDCO owns the property to "secure the money it has

advanced to purchase and develop the facilities it leases to its

industrial  tenants"  and  "to  protect  its  interest  in  advancing

industrial  development."   (Docket No. 117-3 at p. 2.)   PRIDCO

financed the 1964 acquisition of the Maunabo property pursuant to

a sinking fund arrangement[16] with First National City Bank in which

---

[16] A sinking fund is "derived from particular taxes, imposts or duties, which
is to be apportioned toward the payment of the interest due on a public loan
and for the payment of the principal." Sidney Spitzer & Co. Commissioners of
Franklin County, 188 N.C. 30, 35 (1924).

PRIDCO issued a series of bonds. (Docket No. 117-4 at p. 52.) PRIDCO pledged to deposit revenues generated from the property into an account exclusively to service its debt, and allocated the remaining income into a separate account "for any proper corporate purposes of [PRIDCO]." (Docket No. 117-4 at p. 52.)

That PRIDCO held a separate account for corporate purposes demonstrates that ownership of the property served to further economic development (one of PRIDCO's purposes), not primarily to secure repayment of a debt, which is the sole statutory basis for invoking the secured creditor exemption. 42 U.S.C. § 9601(20)(E). Furthermore, PRIDCO has owned the property for more than 60 years, and unlike FAME, has never undertaken "prompt effort[s] to divest itself" of the property. Indeed, exempting PRIDCO from liability would betray the underlying policy of the secured creditor exemption: "to protect bona fide lenders and to avoid imposing liability on 'owners' who are in fact seeking to protect from the interest opportunity normally presented by prolonged ownership." Waterville, 984 F.2d at 553.

In an effort to persuade the Court to apply the secured creditor exemption, PRIDCO also cites Monarch Tile, Inc. v. City of Florence for the proposition that "governments often hold title or other indicia of ownership during the duration of a long term lease so that it can ensure that its investment is repaid." 212

F.3d 1219 (11th Cir. 2000). In <u>Monarch Tile</u>, the Eleventh Circuit Court of Appeals held that the City of Florence, which acquired property to foster economic development, qualified for the secured creditor exemption. <u>Id.</u> The facts of this case are distinguishable from those of <u>Monarch Tile</u>, however, because unlike PRIDCO, the City of Florence pledged "<u>all</u> rents, revenues, and income to the payment of the principal and interest on the bonds" <u>Monarch Tile, Inc. v. City of Florence</u>, Case No. 86-1511, 1999 U.S. Dist. LEXIS 9695 (N.D. Ala. Apr. 23, 1999) (emphasis added). Here, by contrast, PRIDCO and First National City Bank created two accounts: one to service the bonds and the other for "proper corporate purposes of PRIDCO." (Docket No. 117-4 at p. 53.)

The secured creditor exemption is reserved for government entities that hold property "primarily to ensure that [debtors] meet their] obligations." <u>In re Bergsoe Metal Corp.</u>, 910 F.2d 668, 671 (9th Cir. 1990). If PRIDCO held title primarily to finance the bonds, it would have no need to maintain a separate account for "proper corporate purposes." (Docket No. 117-4 at p. 52.) Moreover, unlike the City of Florence, which was prohibited from using the property to which it held title, <u>Monarch Tile</u>, 1999 U.S. Dist. LEXIS 9695, at *4, PRIDCO freely used the Maunabo property. For instance, PRIDCO commissioned Caribe

Environmental Services to review available information regarding the property prior to the publication of the ROD. (Docket No. 101-15 at p. 4.) The files reviewed by Caribe Environmental Services demonstrate that PRIDCO: requested the Puerto Rico Electric Power Authority to remove three discarded transformers from the property, permitted the Municipality of Maunabo to park waste collection trucks at the property, evicted the Puerto Rico Beverage Company from the property in 2010, compensated contractors for work performed at the property, repeatedly visited the property, and prohibited Aqua Pura from using groundwater at the property. Id. at pp. 1-9.

Additional evidence demonstrates that PRIDCO is ineligible for the secured creditor exemption because owners that possess more than mere "indicia or ownership" generally are responsible "for the payment of taxes and for the purchase of insurance." In re Bergsoe Metal Corp., 910 F.2d at 671 ("[S]ignificantly, the leases assign to [the PRP] the risk of loss from the destruction or damage to the property."). Pursuant to its agreement with First National City Bank, PRIDCO "covenant[][ed] that it will at all times carry or cause to be carried [. . .] all risk insurance covering all building and machinery and equipment included in the Trusted Properties, including fire insurance." (Docket No. 117-4 at pp. 62-63.) The

record before the Court compels the conclusion that PRIDCO

functioned as an owner and landlord, not a passive government

institution in possession of property primarily to guarantee

repayment of a loan.

In addition to the factual distinctions between this

case and Monarch Tile, the Eleventh Circuit Court of Appeals set

forth a form of governmental immunity in Monarch Tile that is not

contained in the statutory language of CERCLA.  In holding that

the secured creditor exemption applied to the City of Florence,

the Monarch Tile court reasoned that:

> Plainly, governments will never acquire property for the
> purpose of protecting a security interest in that same
> property. Governments acquire property to further some
> public purpose, be it economic development,
> environmental protection, or flood control. Once those
> public purposes are met, however, as it was in this case
> when a tile manufacturing factory began operating on the
> property, the government often holds title or other
> indicia of ownership during the duration of a long-term
> lease so that it can ensure that its investment is
> repaid.

Monarch Tile, 212 F.3d at 1223.  This rationale places government

entities that acquire and lease property beyond the scope of CERCLA

liability, broadening the secured creditor exemption.  This Court

cannot adopt such an expansive application of the secured creditor

exemption.  Instead, this Court will adhere to the First Circuit

Court of Appeals' imperative that "we construe [CERCLA's]

provisions liberally to avoid frustration of the beneficial

legislative purpose [of CERCLA.] [W]e will not interpret [section 107] in any way that apparently frustrates the statute's goals." Dedham Water Co., 805 F. 2d 1074, 1081 (1st Cir. 1986).

If Congress had intended to create a blanket exemption from liability for government instrumentalities that own property to advance economic development, it could have done so. For example, Congress excluded from the definition of owner "a unit of State or local government which acquired ownership or control involuntarily through bankruptcy, tax delinquency, abandonment, or other circumstances in which the government involuntarily acquires title by virtue of its function as a sovereign." 42 U.S.C. § 9601(20)(D). Also exempted from liability are "government entit[ies] which acquired the facility by escheat, or through any other involuntary transfer or acquisition, or through the exercise of eminent domain authority by purchase or condemnation." 42 U.S.C. 9601(35)(ii).

Tellingly, no exemption exists for government entities that acquire property to further economic development. See id. On the contrary, CERCLA explicitly includes municipalities, states and other political subdivisions within the definition of persons potentially subject to liability. 42 U.S.C. § 9601(21); United States v. Iron Mt. Mines, 881 F. Supp. 1432 (E.D. Cal. 1995)

(holding the United States liable as an owner of contaminated site pursuant to CERCLA).[17]

The secured creditor exemption applies in this case. Accordingly, the Court **GRANTS** summary judgment in favor of the United States as to this defense.

## V.    Third Party Complaint

PRIDCO filed a third party complaint against tenants that leased the property from PRIDCO as possible generators of contamination.  (Docket No. 46.)   Third party defendants Juan Orozco Ltd., Inc., the Puerto Rico Housing Department, and Beckman Coulter, Inc. filed answers to the third party complaint.  (Docket Nos. 51, 53 and 68.)  Subsequently, PRIDCO moved to amend the third party complaint.   (Docket No. 77.)   The Court denied PRIDCO's motion to amend the third party complaint, following Congress's directive that courts "should carefully manage cases pursuant to this section to ensure that the [CERCLA] litigation is conducted in an expeditious manner and it is not unduly delayed by concurrent maintenance of third party actions."   H.R. Rep. No. 253, 99th Cong., 1st Sess. at 88 (1985).

---

[17] CERCLA defines "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a state, or interstate body."  42 U.S.C. § 9601(21) (emphasis added).

PRIDCO seeks contribution from tenants that occupied the property pursuant to section 9613(f)(1) of CERCLA. (Docket No. 46 at p. 10; 42 U.S.C. § 9613(f)(1).) PRIDCO may do so, but not in a manner that hinders the expeditious resolution of this action. Finding that PRDICO is *prima facie* liable pursuant to section 107(a) of CERCLA alters the course of this litigation. Accordingly, the Court **ORDERS** the United States and PRIDCO to meet and confer regarding the third party complaint before the January 16, 2018 pretrial conference, at which point the parties will set forth their respective positions regarding the third party complaint.

## VI. CONCLUSION

For the reasons set forth above, the Rule 56(d) motion to defer disposition of the United States' motion for summary judgment is **DENIED**. The United States' motion for summary judgment is **GRANTED IN PART**, and **DENIED IN PART**. The Court finds that PRIDCO is *prima facie* liable pursuant to section 107 CERCLA, and that PRIDCO is ineligible for the secured creditor exemption. PRIDCO is free to reassert the third party, innocent landowner, and contiguous landowner defenses during Phase II and Phase III of this litigation.

The stay (docket no. 129) is **VACATED**. Consistent with the joint case management order, the Court **ORDERS** the parties to confer

and file proposed discovery plans for Phase II and Phase III no later than 20 days after the filing of this opinion and order. (Docket Nos. 24 at p. 13; Docket No. 32.)  The Court further **ORDERS** the United States and PRIDCO to meet and confer with each other regarding the third party complaint, which will be addressed at the January 16, 2018 pretrial conference.  The trial scheduled to commence on February 5, 2018 (docket no. 114) is continued.  It will be scheduled by separate order.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, December 7, 2017.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE