# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>Plaintiff<br><br>vs.<br><br>**PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY**<br><br>Defendant and Third Party Plaintiff<br><br>vs.<br><br>**COMPRO COMPUTER SERVICES, INC.,** as successor in interest of System Engineering Labs, Inc. and System Corporation de Puerto Rico, Inc. and any of its wholly owned subsidiaries; **BECKMAN COULTER, INC.**, as successor in interest of Coulter Electronics and its wholly owned subsidiaries having leased premises at the Maunabo Site; **FILTERTEK, INC.**, as parent of Filtertek of Puerto Rico, Inc., **INSURANCE COMPANIES A-Z**<br><br>Third-Party Defendants | CIVIL NO.: 15-CV-02328 (FAB)<br><br>SUBJECT: ENVIRONMENTAL MATTERS **CERCLA THIRD PARTY CONTRIBUTION CLAIM (PHASE III)**<br><br>**JURY TRIAL** |

## SECOND AMENDED THIRD PARTY COMPLAINT

**TO THE HON. FRANCISCO A. BESOSA:**

Defendant and Third-Party Plaintiff, the Puerto Rico Industrial Development Company (hereafter "PRIDCO"), through the undersigned attorneys, alleges and prays as follows:

**NATURE OF THE ACTION AND JURISDICTION**

1. This is a civil action for recovery of costs for which it has been held liable brought pursuant to Section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). 42 U.S.C. § 9613.

2. This is an action against the listed Third-Party Defendants to recover all enforcement, response and remediation costs which this court ordered PRIDCO to satisfy to the United States related to the efforts in the Maunabo Area Groundwater Contamination Superfund Site ("Site"), located in the Municipality of Maunabo, Puerto Rico.

3. This court's judgment was affirmed on appeal by the United States Court of Appeals for the First Circuit on November 17, 2021. *United States v. Puerto Rico Industrial Development Company,* 18 F.4th 370 (1st Cir. 2021).

4. Despite having found no traces of contamination in the soil evidencing a "*release*", the Appellate Court agreed with the district court and held, *inter alia*, that:

> As the owner of the Property, PRIDCO is clearly *prima facie* liable due to the undisputed presence of hazardous substances in its "ground water." *42 U.S.C. § 9601(8)*. On these facts, evidence of soil contamination is not required. The undisputed evidence is that the groundwater on PRIDCO's property (and within its "facility," see *PRIDCO I, 287 F. Supp. 3d at 142*) is contaminated with at least two hazardous substances: TCE and cis-1,2- DCE. *40 C.F.R. § 302.4*. This contaminated groundwater is included within the statutory definition of environment," *42 U.S.C. § 9601(8)*, in addition to constituting part of PRIDCO's "facility" in this case. Because groundwater flows and is not static, the hazardous substances have migrated "from" the groundwater in the facility, to the groundwater in the environment, constituting a release.
>
> *Id.,* at p. 378.

5. PRIDCO was found to be a "potentially responsible party" and liable for *prima facie* strict liability purposes under CERCLA section 107 solely because it was the owner of the contaminated parcel of land.

6. PRIDCO did not have any participation in the actual operations of the tenants who occupied the different buildings within its property, including those of the third-party defendants, their predecessors, and their insurers.

7. Thus, PRIDCO is an "innocent" or "non-contributing owner" who was not found to have contributed to the actual contamination of the property because of its limited role as landlord of, among others, the third-party defendants.

8. As an "innocent" or "non-contributing owner" of the property, PRIDCO is entitled to seek the reimbursement from the Third-Parties of all costs incurred and which continue to be incurred by the Environmental Protection Agency ("EPA") in connection with the release of hazardous substances at the Site, and which PRIDCO has been ordered to pay to the United States.

9. Under Section 113 of CERCLA, PRIDCO can proceed to bring its cause of action for contribution against the third party defendants, all of whom are jointly and severally liable.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the subject matter of this action and the Third-Party Defendants, pursuant to Section 113(b) of CERCLA, 42 U.S.C. §9613(b), and pursuant to 28 U.S.C. § 1331.

11. Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this District, and because the Site is located in this District.

## PARTIES

12. Third Party Plaintiff, PRIDCO is a public corporation and governmental

instrumentality of the Commonwealth of Puerto Rico created by Act No. 188 of May 11, 1942, as subsequently amended, and has the power to sue and be sued in Court.

13. Its general purpose is to promote commercial and industrial operations in Puerto Rico and encourage private investment thereto. *See id.*, Sections 8 & 9, P.R. Laws Ann., Tit. 23 §§ 275 & 276.

14. The Third Party defendants are the entities -their predecessors, successors in interest, affiliates and/or insurers- who occupied and operated on PRIDCO property as Tenants, under a Lease Agreement and were listed on the United States/Environmental Protection Agency complaint as possible generators of contamination at Maunabo Superfund site.

15. PRIDCO's relationship with its Tenants is that of landowner with the aim of providing incentives to established industries and attract them to Puerto Rico to open facilities, invest and promote the Island's industrial development.

16. As Tenants, each company is responsible for the control of its operations and observance of all applicable rules and regulations and, of particular importance for this claim, full compliance with environmental legislation.

17. Since its opening, the following Tenants occupied premises on PRIDCO's Maunabo Industrial Sites at different times, and the nature of their operations has been as follows:

> a. System Engineering Laboratories, Inc. / System Corporation de Puerto Rico, Inc. / Gould S.E.L. Computer systems, inc. de Puerto Rico - printed circuit modules and related products.
>
> b. Coulter Reagents, Inc. / Couter Electronics, Inc. / Coulter Chemistry, Inc. / Coulter Biochemical / Reactivos Médicos Coulter de Puerto Rico, Inc. -

manufacturing of medical reagents.

    c. Coulter Chemistry – manufacture of blood analysis equipment.

    d. Solar Mat of Puerto Rico Company Inc. - manufacture of solar collections systems and heaters.

    e. Orle International Corporation - manufacture of furniture and related products.

    f. Puerto Rico Housing Department – shelter for Hurricane Hugo in 1989.

    g. Municipality of Maunabo - garage for municipal vehicles and storage of medicines and cots for shelters.

    h. Premium Fruit Company - production of natural fruit beverages.

    i. Puerto Rico Beverage Inc. - production of natural fruit beverages.

    j. EIG Agua Pura de PR, Inc. - production of natural fruit beverages.

    k. Filtertek de Puerto Rico, Inc. - manufacture of filters.

    l. Juan Orozco LTD, Inc. - manufacture of guitars, guitar cases, guitar strings and related accessories.

    m. Cooperativa Industrial de Mercadeo - Agrimax - cooperative of plantain growers.

    n. CATPI, Inc. ("Centro de Adiestramiento y Trabajo para personas con Impedimentos) - training center in the manufacture of floury or farinaceous products.

    o. SUNOCO – short-term storage of finished goods.

18. The Third-Party Defendants are the entities who are successors in interest or warrantors to one or more actual tenants who operated on PRIDCO property under a lease agreement and whose operations involved the use of chlorinated solvents such as those found in the contaminated groundwater below PRIDCO's property at the Site.

19. As part of the lease agreement, all tenants (and their successor, assignees, subsidiaries, parent companies or warrantors), including the Third Party Defendants, were to hold PRIDCO harmless for any environmental liability as a result of their operations in the leased property.

20. Although CERCLA imposes joint and several liability on landowners and operators (tenants) alike, who may later seek contribution and/or allocation of liability, the right to indemnity arises when one party pays a joint legal obligation. Thus, enforcement of contractual indemnity provides for allocation, apportionment, or full reimbursement of liability among statutory jointly liable parties.

21. Contractually, PRIDCO secured the right to indemnity from its tenants - who are Third-Party Defendants here. PRIDCO hereby demands performance of its tenants' duties under the indemnity clause as well as under the law.

### System Engineering Laboratories, Inc. ("SEL")

22. Systems Engineering Laboratories, Inc. ("SEL") was founded and incorporated in Fort Lauderdale, Florida in 1959 and was one of the first companies to work with microcomputers.

23. On December 16, 1969, SEL signed a Lease Contract with PRIDCO to occupy a space in its Maunabo Industrial Park. The Lease Contract contemplated SEL's assignment of its lease contract to another corporation in which SEL would be a principal stockholder, so long as the new corporation assume and complied with all obligations under the contract.

24. On June 24, 1970, Systems Corporation de Puerto Rico, a Delaware corporation and wholly owned subsidiary of SEL, accepted the assignment of SEL's Lease Contract with PRIDCO and assumed all of its obligations.

25. In 1980, Gould, Inc. acquired SEL, including its interest in System Corporation de Puerto Rico, Inc. and continued to operate as the Gould Computer Systems Division.

26. In 1982, System Corporation de Puerto Rico requested a change of name to Gould S.E.L. Computer System Inc. de Puerto Rico.

27. In 1983, the Gould S.E.L. Computer System Inc. de Puerto Rico company requested to change its name to Gould Computer Systems Inc. de Puerto Rico.

28. In 1989, Encore Computer Corporation purchased Gould Computer Systems, Inc., parent of Gould Computer System de Puerto Rico.

29. In 1998 Gores Technology Group acquired Encore Computer Corporation, and renamed it Encore Real Time Computing.

30. In 2002, Compro Computer Services, Inc. ("Compro") acquired Encore Real Time Computing, including its accompanying legacy SEL/Gould resources.

31. Compro is organized under the laws of the State of Florida and with its headquarters located at 105 East Drive Melbourne, FL 32904.

32. Compro is the successor in interest of SEL and System Corporation de Puerto Rico, Inc.

33. As such, Compro is in the same position as its predecessors for, among others, purposes of liability under CERCLA.

34. Because SEL and System Corporation de Puerto Rico, Inc. utilized chlorinated solvents such as those found in the contaminated groundwater beneath PRIDCO's property while they carried out their operations in the leased premises at the Site, Compro, as their successor in interest, and may be liable to PRIDCO for the total or partial recovery and reimbursement of costs imposed upon it under CERCLA's §113(f).

# Beckman Coulter, Inc.

35. Equipo Médico Coulter de Puerto Rico, Inc., (the "Company") was a corporation organized under the laws of the State of Illinois on June 15, 1971.

36. On September 30, 1971, the Company filed the Certificate of Registration (No.3740-F), with the Puerto Rico Department of State.

37. On February 8, 1973, the Company filed a Certificate of Amendment and changed its name to Coulter Chemistry, Inc.

38. According to the Foreign Corporation Report filed in 1974 with the Puerto Rico Department of State, Coulter Chemistry, Inc. was a wholly owned subsidiary of Coulter Electronics, Inc., as of March 31, 1974.

39. On the Foreign Corporation Report filed on 1976 the Company reported its intention to discontinue doing business in Puerto Rico as of September 30, 1976.

40. On November 12, 1976, Coulter Biochemical Corp., a corporation organized under the laws of Illinois on October 14, 1976, filed a Certificate of Registration (No. 4998-F) with the Puerto Rico Department of State.

41. According to the Foreign Corporation Report filed in 1980 with the Puerto Rico Department of State Coulter Biochemical Corp. was a wholly owned subsidiary of Coulter Electronics, Inc., as of March 31, 1980. The company was not active during 1981.

42. As of March 31, 1979, Coulter Reagents, Inc., an Illinois Corporation, was a wholly owned subsidiary of Coulter Electronics, Inc., according to their Corporate Annual Report filed with the Puerto Rico Department of State.

43. Coulter Reagents, Inc., was authorized to do business in Puerto Rico (No. 3739-F) since September 30, 1971, under the name Reactivos Médicos Coulter de Puerto Rico, Inc. and officially changed its name to Coulter Reagents, Inc. on February 8, 1973.

44. The Delaware Branch of Beckman Instruments Inc. filed a Certificate of Authorization to Do Business in Puerto Rico (No. 4219-F) with the Puerto Rico Department of State.

45. This Certificate of Authorization was cancelled in the Department of State on April 16, 2014.

46. In October 1997, Beckman Instruments, Inc. acquired Coulter Corporation.

47. In April 1998, Beckman Instruments, Inc. changed its name to Beckman Coulter, Inc. to reflect the acquisition of Coulter Corporation.

48. On October 15, 1999, Beckman Coulter, Inc. filed a Certificate of Authorization to Do Business in Puerto Rico (No. 11,162-F) with the Puerto Rico Department of State.

49. Beckman Coulter, Inc. is the successor in interest of Coulter Corporation and its wholly owned subsidiaries, including those who operated on premises leased from PRIDCO at the Site.

50. As such, Beckman Coulter, Inc. is in the same position as its predecessors for, among others, purposes of liability under CERCLA.

51. Because one or more of companies, including Coulter Electronics, Inc. and/or Equipo Médico Coulter de Puerto Rico, Inc. and/or, Coulter Reagents, Inc. and/or Coulter Chemistry, Inc. and/or Coulter Biomedical Corporation, utilized chlorinated solvents such as those found in the contaminated groundwater beneath PRIDCO's property while they carried out their operations in the leased premises at the Site, Beckman Coulter, Inc., as their successor in interest may be liable to PRIDCO for the total or partial recovery and reimbursement of costs imposed upon it by the judgment of this court.

**Filtertek, Inc.**

52. Filtertek, Inc. is the parent company of Filtertek de Puerto Rico, Inc., a corporation and wholly owned subsidiary created pursuant to the Laws of the State of Delaware and authorized to do business in Puerto Rico until 2005.

53. In 1977, Filtertek de Puerto Rico, Inc. assumed the Lease Contract between Coulter Chemistry and PRIDCO for property in its Maunabo Site. It continued doing business in Puerto Rico until 2005, when it requested that its status as a corporation authorized to do business in the Commonwealth of Puerto Rico be voluntarily cancelled.

54. Because Filtertek de Puerto Rico, Inc. utilized chlorinated solvents such as those found in the contaminated groundwater beneath PRIDCO's property while it carried out operations in the leased premises at the Site, Filtertek, Inc., as its successor in interest and/or warrantor may be liable to PRIDCO for the total or partial recovery and reimbursement of costs imposed upon it.

55. As such, Filtertek, Inc. is in the same position as its predecessor and wholly owned subsidiary for, among others, purposes of liability under CERCLA's §113(f).

**Insurance Companies A-J**

56. Insurance Companies A-J are currently unknown insurance companies duly authorized to do business in the Commonwealth of Puerto Rico or under foreign charters that have issued and had standing, valid insurance policies in favor of one or more of the Third-Party Defendants and/or their successors, which provide coverage for some or all of the liability imposed on PRIDCO and respond for all or part of the judgment in this case.

**PREVIOUS PROCEEDINGS AND JUDGMENT**

57. On September 25, 2015, the EPA commenced an action under Section 107 of CERCLA, 42 U.S.C. § 9607 for the recovery of costs incurred and which it continues

to incur in relation to the Site. Docket No. 1. It filed an Amended Complaint on February 19, 2016. Docket No. 8.

58. On February 24, 2017, the court granted the EPA's petition to trifurcate the litigation of the action into three separate phases. Docket No. 85. Third party liability was stayed while the *prima facie* liability and the damages part of the EPA's claim were adjudicated.

59. After discovery was concluded, the court granted the Motions for Summary Judgment presented by the EPA and entered "what it termed an 'Amended Final Judgment' to permit the immediate appeal of [the summary judgment] orders, citing to Federal Rules of Civil Procedure 54(b) and 58." 14 F.4th, at p. 372.

60. The Amended Final Judgment against PRIDCO was affirmed on appeal on November 17, 2021 . *Id.,* at p.383.

61. The mandate issued on January 16, 201 and entered on docket on January 11, 2022. Docket No. 191.

62. Thereafter, the United States and PRIDCO reached a settlement of all claims between them.

63. A Consent Decree is pending to be submitted to the court for approval after the statutory public comment period expires.

**GENERAL FACTUAL ALLEGATIONS[1]**

64. The Site is located in the southeastern coastal area of Puerto Rico. The surface land that comprises the Site is used for agricultural, commercial, residential, and light industrial purposes. The Property is part of the Site.

---

[1] Because of the full litigation of the issues concerning PRIDCO's *prima facie* liability under CERCLA, the facts discussed herein have already been established

11

65. PRIDCO has owned the Property since at least 1968. Between approximately 1968 and the present, PRIDCO leased the Property to various tenants who performed different and, mainly, manufacturing operations.

66. Chlorinated solvents, including trichloroethylene ("TCE") and/or tetrachloroethylene ("PCE"), were used in some or all of the manufacturing processes involving the predecessors in interest of the Third-Party defendants, including, but not limited to, circuit manufacturing and medical instrument manufacturing.

67. Once released into the groundwater, TCE can biodegrade over time into the chlorinated volatile organic compound cis-1,2-dichloroethene ("cis-1,2-DCE").

68. In 2002, chlorinated volatile organic compounds were detected in a public water supply well, Maunabo No. 1 Supply Well, in the vicinity of the Site.

69. In September 2006, the Site was placed on the National Priorities List ("NPL"). 71ed. Reg. 56399 (Sept. 27, 2006).

70. The NPL is a national list of hazardous waste sites posing the greatest threat to health, welfare, and the environment, and was established pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

71. The groundwater at the Site is contaminated with chlorinated volatile organic compounds, including cis-1,2-DCE, PCE, 1,1 dichloroethene ("1,1-DCE"), TCE, methyl tertiary butyl ether, and benzene. All of these are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

72. Three plumes of contaminated groundwater were identified at the Site, including one principally composed of cis-1,2-DCE, one of PCE, and one of 1,1-DCE. PRIDCO's property is a part of the Site and is situated above the cis-1,2-DCE plume.

73. The groundwater beneath PRIDCO's property is contaminated with the

hazardous substances cis-1,2-DCE and TCE.

74. The levels of cis-1,2-DCE and TCE in the groundwater directly beneath the property were found to exceed the maximum contaminant level ("MCL") for those hazardous substances. Cis-1,2-DCE was detected in concentrations of up to 300 parts per billion ("PPB"). The MCL for cis-1,2-DCE is 70 PPB. TCE was detected in concentrations of up to 175 PPB. The MCL for TCE is 5 PPB.

75. The court held, and the First Circuit agreed, that the location and configuration of the cis-1,2-DCE plume, the sampling results from the groundwater beneath PRIDCO's parcel, and the sampling results from the groundwater in the upgradient area, indicate that the PRIDCO Property is the source of the contamination in the cis-1,2-DCE plume and that a release occurred in the Property.

76. The sampling results indicate that hazardous substances – including TCE and/or PCE – were released on the Property. *See,* 18 F.4th*, at p. 378.

77. Hazardous substances, including TCE and/or PCE, were released during the industrial operations of the predecessors of the Third-Party defendants on the Property and for which they are liable.

78. The hazardous substances leached through the soil on the Property into the groundwater that lies beneath PRIDCO's Property. Over time, the TCE that was released from the Property biodegraded into cis-1,2-DCE, the primary hazardous substance that comprises the contaminated groundwater plume underlying PRIDCO's property.

79. The EPA conducted numerous analysis and investigations leading to the conclusion that a release from PRIDCO's property was the source of contamination in the groundwater underneath the soil.

80. As a result of said efforts the EPA incurred and will continue to incur

response and remediation costs, as well as enforcement costs, in connection with the Site for which PRIDCO has been found liable, though it did not contribute in any form or manner to the release of hazardous substances from operations of the Third Party defendants that caused the EPA to incur in enforcement, response and remediation costs.

81. PRIDCO fully and vigorously litigated the claims raised by the United States in its principal complaint under CERCLA, raising defenses that benefitted the Third Party defendants and could be deemed in full representation of their interest.

82. The amount of the costs that have been imposed upon PRIDCO and for which it seeks reimbursement from the Third-Party defendants amounts to, approximately, ELEVEN MILLION DOLLARS ($11,000,000.00) from the following sources: **$5,491,278.78** plus interests for response costs accrued through February 28, 2018 as a result the initial judgment entered; and since February of 2018, the United States accrued additional response and enforcement costs and accrued, increasing the amount to $10,974,133.99. The settlement reached between PRIDCO and the United States, subject to Court approval, contemplates the payment by PRIDCO of $11,000,000.00 in 28 quarterly payments at a 3.5% interest rate over seven years.

83. Among the costs incurred by the EPA and for which PRIDCO seeks reimbursement are those related to the implementation of the remedy selected, *i.e.,* air sparging, in the September 2012 ROD and which selection was not arbitrary or capricious. 18 F.4th at pp. 381-383.

### FIRST CLAIM FOR RELIEF

84. Paragraphs 1-83 are re-alleged and incorporated herein by reference.

85. The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to respond to the releases or

threatened releases of hazardous substances at the Site and PRIDCO has been found liable for reimbursement of all costs incurred by the EPA.

86. Since the PRIDCO property has been determined to be the source of the contamination, the Third-Party defendants are the ones responsible for such release. They were in full control of the Property and all activity within it during the time each occupied the same.

87. Because one of the statutory triggers for a contribution claim has been met by the EPA's filing of its Complaint under section 107(a), PRIDCO is entitled to pursue the instant contribution claim under section 113(f)(1) of the statute 42 U.S.C. §9613(f)(1).

88. PRIDCO claims that the Third-Party defendants should be found liable for reimbursement of costs to PRIDCO in the amount Defendant is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

89. As potentially responsible parties, each third-party defendant should be found liable for its equitable share of the contamination caused by the use of hazardous substances.

90. Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), the Third-Party defendants are severally liable to PRIDCO for all costs incurred by and adjudged in favor of the United States and imposed upon PRIDCO as a result of the "Amended Final Judgment" in the proportion which the court deems to be appropriately equitable.

91. These costs for which PRIDCO seeks reimbursement in the present Second Amended Third-Party Complaint are currently estimated in an approximate amount not less than ELEVEN MILLION DOLLARS, plus interest at the annual rate of $3.50%.

**SECOND CLAIM FOR RELIEF**

92. Paragraphs 1-91 are re-alleged and incorporated herein by reference.

93. Codefendants Insurance Companies A-Z have or had in effect policies in favor of Third-Party defendants providing coverage as successors in interest or warrantors of their predecessors and/or in favor of their predecessors for liability under CERCLA and actions such as those related herein.

94. Because of their insureds' liability under CERCLA as alleged in the instant Third-Party Complaint, they are liable to PRIDCO for contribution of their equitable share of enforcement and/or response and/or remediation costs which have been imposed upon it because of their status as operators of a facility from which a release of hazardous substances and potentially responsible parties has caused PRIDCO to assume enforcement, response and remediation costs originally incurred by the EPA.

95. These costs for which PRIDCO seeks reimbursement in the present Third-Party Complaint are currently estimated in an approximate amount not less than ELEVEN MILLION DOLLARS, plus interest at the annual rate of $3.50%.

### THIRD CLAIM FOR RELIEF

96. Paragraphs 1-95 are re-alleged and incorporated herein by reference.

97. Although CERCLA imposes joint and several liability on landowners and operators (tenants) alike, who may later seek contribution and/or allocation of liability, the right to indemnity arises when one party pays a joint obligation under the law for the actions of the joint tortfeasors.

98. Enforcement of contractual indemnity shifts the entire liability to the negligent or responsible parties, despite allocation or apportionment of liability among statutory jointly liable parties.

99. Contractually, PRIDCO secured the right to indemnity from its tenants such

as Third-Party Defendants here. The tenants (and/or their successors or warrantors) named here as Third-Party Defendants handled the hazardous substances, including TCE and/or PCE, that were released during the industrial operations of their predecessors on the Property and for which they are liable to PRIDCO.

100. As a result, the EPA incurred and will continue to incur response and remediation costs, as well as enforcement costs, in connection with the Site for which PRIDCO has been found liable, though it did not contribute in any form or manner to the release of hazardous substances from the operations of the Third-Party defendants that caused the EPA to incur in enforcement, response and remediation costs.

101. PRIDCO was, in fact, held jointly liable for such release and the resulting environmental damages, under CERCLA. PRIDCO hereby demands specific performance of its tenants' duties under the indemnity and hold harmless clause, as well as under the law, for which they are contractually and legally responsible.

102. Furthermore, under equitable indemnification, PRIDCO also seeks indemnification from the Third-Party Defendants. Common Law indemnification allows a non- culpable party who has been compelled to make a payment to shift the entire burden of loss to the liable party and obtain from that party full reimbursement for its loss.

## DEMAND FOR JURY TRIAL

103. Third Party Plaintiff PRIDCO demands that all claims against the Third-Party defendants be tried before a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, THIRD-PARTY PLAINTIFF PRIDCO, respectfully requests that this Court:

A. Enter Judgment finding the Third-Party Defendants jointly and severally liable to

PRIDCO and an Order for them to reimburse PRIDCO for all response costs, including enforcement costs incurred by the United States and imposed upon PRIDCO as part of the Amended Final Judgment in connection with the Site in the approximate amount of ELEVEN MILLION DOLLARS, including interest thereon, under CERCLA and under the Lease Agreement provisions;

B. Order the Third-Party Defendants to respond for any future costs that may be levied against PRIDCO by the EPA to recover further response costs, including enforcement costs, plus interest thereon in the proportions the court determines to be equitable, under CERCLA and under the Lease Agreement provisions;

C. Award PRIDCO its costs and fees in this Third-Party action; and

D. Grant PRIDCO any other relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED,** in San Juan, Puerto Rico, this 27th day of December, 2022.

**WE HEREBY CERTIFY** that this document has been filed on this date using the CM/ECF system which will send copy to each of the parties already having been served with process through their respective attorneys at their electronic addresses of record.

*Attorneys for Third-Party Plaintiff PRIDCO*

**PLC**

PROFESSIONAL | LEGAL | COUNSELS

PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@plclawpr.com
jgonzalez@gonzalezmunozlaw.com
dianabatlle@gmail.com

*s/JUAN J. CASILLAS-AYALA*
**USDC-PR No. 218312**

*s/JUAN R. GONZALEZ MUNOZ*
**USDC-PR No. 202312**

*s/DIANA M. BATLLE-BARASORDA*
**USDC-PR No. 213103**