IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>Plaintiff<br><br>vs.<br><br>**PUERTO RICO INDUSTRIAL DEVELOPMENT COMPANY**<br><br>Defendant and Third-Party Plaintiff<br><br>vs.<br><br>**COMPRO COMPUTER SERVICES, INC.,** as successor in interest of System Engineering Labs, Inc. and System Corporation de Puerto Rico, Inc. and any of its wholly owned subsidiaries; **BECKMAN COULTER, INC.**, as successor in interest of Coulter Electronics and its wholly owned subsidiaries having leased premises at the Maunabo Site; **FILTERTEK, INC.**, as parent of Filtertek of Puerto Rico, Inc., **INSURANCE COMPANIES A-Z**<br><br>Third-Party Defendants | CIVIL NO.: 15-CV-02328 (GMM)<br><br><br>ENVIRONMENTAL MATTERS<br><br>**CERCLA CONTRIBUTION CLAIM (PHASE III)**<br><br>**JURY TRIAL** |

### THIRD AMENDED THIRD PARTY COMPLAINT[1]

**TO THE HON. GINA MÉNDEZ-MIRÓ:**

Defendant and Third-Party Plaintiff, the Puerto Rico Industrial Development Company (hereafter "PRIDCO"), through the undersigned attorneys, alleges and prays as follows:

---

[1] Filed as a matter of right pursuant to Fed. R. Civ. P. 15(a), exclusively, as to third-party defendant *Compro Computer Services, Inc*. because it has not filed an answer or a Motion for Summary Judgment. In a separate motion to be filed today, PRIDCO explains why the court should grant it leave to conduct limited discovery from *Compro* and the other two Third Party Defendants, *Beckman Coulter, Inc*. and *Filtertek, Inc*., regarding the issue of successor liability.

1

## NATURE OF THE ACTION AND JURISDICTION

1. This is a civil action for contribution brought pursuant to Section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613, against the Third-Party Defendants because PRIDCO was found liable to the United States as an "owner" and potentially responsible party under CERCLA's §107(a) 42 U.S.C. 9613.

2. PRIDCO seeks to recover from the Third-Party Defendants all enforcement, response and remediation costs which this court ordered PRIDCO to satisfy to the United States related to the response and remediation efforts in its parcel of land (the "property") in the Maunabo Area Groundwater Contamination Superfund Site ("Site"), located in the Municipality of Maunabo, Puerto Rico in connection with the release by the predecessors of the Third Party Defendants, including, but not limited to chlorinated Volatile Organic Compounds ("VOCs") including trichloroethylene ("TCE").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action and the Third-Party Defendants, pursuant to Section 113(b) of CERCLA, 42 U.S.C. §9613(b), and 28 U.S.C. § 1331.

4. Venue is proper in this District under 28 U.S.C. §1391(b) and §113(b) of CERCLA, 42 U.S.C. § 9613(b) because the releases or threatened releases of hazardous substances into the environment that gave rise to this claim occurred in this judicial district.

## PARTIES

5. Third Party Plaintiff, PRIDCO is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico created by Act No. 188 of May 11, 1942, as subsequently amended, and has the power to sue and be sued in Court.

6. Its general purpose is to promote commercial and industrial operations in Puerto Rico and encourage private investment thereto. See id., Sections 8 & 9, P.R. Laws Ann., Tit. 23 §§ 275 & 276.

7. The Third-Party Defendants, BECKMAN COULTER, INC., COMPRO COMPUTER SERVICES, INC. and FILTERTEK, INC.,[2] are the entities whose predecessors, affiliates, wholly-owned subsidiaries and/or insurers occupied and operated on PRIDCO's Maunabo Industrial property as tenants under Lease Agreements and who are PRPs as "operators" and/or "generators" of hazardous substances that caused the contamination at Maunabo's Superfund Site's groundwater.

8. The Third Party Defendants assumed the CERCLA liability of their respective predecessors.

## GENERAL FACTUAL ALLEGATIONS

9. The Site is located in the southeastern coastal area of Puerto Rico. The surface land that comprises the Site is used for agricultural, commercial, residential, and light industrial purposes.

10. The Property is part of the Site. PRIDCO has owned the Property since at least 1968. Between approximately 1968 and the present, PRIDCO leased the Property to various tenants who performed different and, mainly, manufacturing operations.

11. Chlorinated solvents, including trichloroethylene ("TCE") and/or tetrachloroethylene ("PCE"), were used in some or all the manufacturing processes involving the predecessors in interest of the Third-Party defendants, including, but not limited to, circuit manufacturing and medical instrument manufacturing.

---

[2] A division of Illinois Tool Works, Inc. DE 268, p. 1.

3

12.     Once released into the groundwater, TCE can biodegrade over time into the chlorinated volatile organic compound cis-1,2-dichloroethene ("cis-1,2-DCE").

13.     In 2002, chlorinated volatile organic compounds were detected in a public water supply well, Maunabo No. 1 Supply Well, in the vicinity of the Site.

14.     In September 2006, the Site was placed on the National Priorities List ("NPL"). 71 Fed. Reg. 56399 (Sept. 27, 2006).

15.     The NPL is a national list of hazardous waste sites posing the greatest threat to health, welfare, and the environment, and was established pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

16.     The groundwater at the Site is contaminated with chlorinated volatile organic compounds, including cis-1,2-DCE, PCE, 1,1 dichloroethene ("1,1-DCE"), TCE, methyl tertiary butyl ether, and benzene. All of these are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

17.     Three plumes of contaminated groundwater were identified at the Site, including one principally composed of cis-1,2-DCE, one of PCE, and one of 1,1-DCE.

18.     PRIDCO's property is a part of the Site and is situated above the cis-1,2-DCE plume.

19.     The groundwater beneath PRIDCO's property is contaminated with the hazardous substances cis-1,2-DCE and TCE.

20.     The levels of cis-1,2-DCE and TCE in the groundwater directly beneath the property were found to exceed the maximum contaminant level ("MCL") for those hazardous substances.

21.     The court held, and the First Circuit agreed, that the location and configuration of the cis-1,2-DCE plume, the sampling results from the groundwater beneath PRIDCO's parcel, and

the sampling results from the groundwater in the upgradient area, indicate that the Property is the source of the contamination in the cis-1,2-DCE plume and that a release occurred in the Property.

22. The area of the property where the court found the release to have occurred is part of or next to the place where the Third-Party Defendant's predecessors occupied PRIDCO's property under the lease agreements.

23. The sampling results indicate that hazardous substances – including TCE and/or PCE – were released on the Property. *See,* 18 F.4th, at p. 378.

24. Hazardous substances, including TCE and/or PCE, were released during the industrial operations of the predecessors of the Third-Party defendants on the Property and for which they are liable.

25. The hazardous substances leached through the soil on the Property into the groundwater that lies beneath PRIDCO's Property. Over time, the TCE that was released from the Property biodegraded into cis-1,2-DCE, the primary hazardous substance that comprises the contaminated groundwater plume underlying PRIDCO's property.

26. The EPA conducted numerous analysis and investigations leading to the conclusion that a release from PRIDCO's property was the source of contamination in the groundwater underneath the soil.

27. As a result of said efforts the EPA incurred and will continue to incur response and remediation costs, as well as enforcement costs, in connection with the Site for which PRIDCO has been found liable, though it did not actively contribute in any form or manner to the release of hazardous substances from operations of the Third Party defendants' predecessors that caused the EPA to incur in enforcement, response and remediation costs.

28. The amount of the costs that have been imposed upon PRIDCO and for which it seeks reimbursement from the Third-Party defendants amounts to, approximately, ELEVEN

MILLION DOLLARS ($11,000,000.00) from the following sources: **$5,491,278.78** plus interests for response costs accrued through February 28, 2018 as a result the initial judgment entered; and since February of 2018, the United States accrued additional response and enforcement costs and accrued, increasing the amount to **$10,974,133.99**. The settlement reached between PRIDCO and the United States, subject to Court approval, contemplates the

payment by PRIDCO of $11,000,000.00 in 28 quarterly payments at a 3.5% interest rate over seven years.

29.     Among the costs incurred by the EPA and for which PRIDCO seeks reimbursement are those related to the implementation of the remedy selected, *i.e.,* air sparging, in the September 2012 ROD and which selection was not arbitrary or capricious. 18 F.4th at pp. 381-383.

## PREVIOUS PROCEEDINGS AND JUDGMENT

30.     On September 25, 2015, the EPA commenced an action under Section 107 of CERCLA, 42 U.S.C. § 9607 for the recovery of costs incurred and which it continues to incur in relation to the Site. Docket No. 1. It filed an Amended Complaint on February 19, 2016. Docket No. 8.

31.     On February 24, 2017, the court granted the EPA's petition to trifurcate the litigation of the action into three separate phases. Docket No. 85. Third party liability was stayed while the *prima facie* liability and the damages part of the EPA's claim were adjudicated.

32.     After discovery was concluded, the court granted the Motions for Summary Judgment presented by the EPA and entered "what it termed an 'Amended Final Judgment' to permit the immediate appeal of [the summary judgment] orders, citing to Federal Rules of Civil Procedure 54(b) and 58." 14 F.4th, at p. 372.

33.     The Amended Final Judgment against PRIDCO was affirmed on appeal on November 17, 2021. *Id.,* at p.383.

34. The mandate was issued on January 16, 2022 and entered on docket on January 11, 2022. DE 191.

35. Thereafter, the United States and PRIDCO reached a settlement of all claims between them.

TENANTS

36. PRIDCO repeats and realleges each and every preceding paragraph and incorporates it by reference as if fully set herein.

37. PRIDCO's relationship with its Tenants is that of landowner with the aim of providing incentives to established industries and attract them to Puerto Rico to open facilities, invest and promote the Island's industrial development.

38. As Tenants, each company is responsible for the control of its operations and observance of all applicable rules and regulations and, of particular importance for this claim, full compliance with environmental legislation.

39. Since its opening, the following Tenants occupied premises on PRIDCO's Maunabo Industrial Site at different times, and the nature of their operations has been as follows:

   a. System Engineering Laboratories, Inc. / System Corporation de Puerto Rico, Inc. / Gould S.E.L. Computer systems, Inc. de Puerto Rico - printed circuit modules and related electronic products.

   b. Coulter Reagents, Inc. / Couter Electronics, Inc. / Coulter Chemistry, Inc. / Coulter Biochemical / Reactivos Médicos Coulter de Puerto Rico, Inc. - manufacturing of medical reagents.

   c. Coulter Chemistry – manufacture of blood analysis equipment.

   d. Solar Mat of Puerto Rico Company Inc. - manufacture of solar collections systems and heaters.

    e. Orle International Corporation - manufacture of furniture and related products.

    f. Puerto Rico Housing Department – shelter for Hurricane Hugo in 1989.

    g. Municipality of Maunabo - garage for municipal vehicles and storage of medicines and cots for shelters.

    h. Premium Fruit Company - production of natural fruit beverages.

    i. Puerto Rico Beverage Inc. - production of natural fruit beverages.

    j. EIG Agua Pura de PR, Inc. - production of natural fruit beverages.

    k. Filtertek de Puerto Rico, Inc. - manufacture of filters.

    l. Juan Orozco LTD, Inc. - manufacture of guitars, guitar cases, guitar strings and related accessories.

    m. Cooperativa Industrial de Mercadeo - Agrimax - cooperative of plantain growers.

    n. CATPI, Inc. ("Centro de Adiestramiento y Trabajo para personas con Impedimentos) - training center in the manufacture of floury or farinaceous products.

    o. SUNOCO – short-term storage of finished goods.

40. The Third-Party Defendants are the entities who are successors in interest or warrantors to one or more of the actual tenants who operated on PRIDCO's property under a lease agreement.

41. As tenants, the Third-Party defendants' predecessors were PRPs - owners and/or operators – under 42 U.S.C. § 9607(a).

42. The predecessors' operations involved the use of chlorinated solvents such as the hazardous substances found in the contaminated groundwater below PRIDCO's property.

43. Upon information and belief, during their leaseholds with PRIDCO, the predecessors of the Third-Party Defendants released and/or disposed volatile chlorinated solvents into the environment causing the contamination of the groundwater under PRIDCO's property.

44. As part of the lease agreement, all tenants (and their successor, assignees, subsidiaries, parent companies or warrantors), including the Third-Party Defendants, were to hold PRIDCO harmless for any environmental liability as a result of their operations in the leased property.

45. Although CERCLA imposes joint and several liability on landowners and operators (tenants) alike, who may later seek contribution and/or allocation of liability, the right to indemnity arises when one party pays a joint legal obligation. Thus, enforcement of contractual indemnity provides for allocation, apportionment, or full reimbursement of liability among statutorily joint liable parties.

46. Contractually, PRIDCO secured the right to indemnity from its tenants, whose successors in interest are Third-Party Defendants here. PRIDCO hereby demands performance of its tenants' duties under the indemnity clause and under the law.

## SUCCESORS IN INTEREST
## AND ASSUMPTION OF CERCLA LIABILITY

### System Engineering Laboratories, Inc. ("SEL")

47. Systems Engineering Laboratories, Inc. ("SEL") was founded and incorporated in Fort Lauderdale, Florida in 1959 and was one of the first companies to work with microcomputers.

48. On December 16, 1969, SEL signed a Lease Contract with PRIDCO to occupy a space in its Maunabo Industrial Park.

9

49. The Lease Contract contemplated SEL's assignment of its lease contract to another corporation under the condition that SEL were a principal stockholder and the new corporation assumed and complied with all obligations under the contract.

50. On June 24, 1970, Systems Corporation de Puerto Rico, Inc., a Delaware corporation and wholly owned subsidiary of SEL, accepted the assignment of SEL's Lease Contract with PRIDCO and assumed all of its obligations.

51. In 1980, Gould, Inc. acquired SEL, including its interest in System Corporation de Puerto Rico, Inc. and continued to operate as the Gould Computer Systems Division in Puerto Rico.

52. By acquiring SEL, Gould, Inc., assumed all of the obligations and liabilities of SEL, including those of its wholly-owned subsidiaries, such as System Corporation de Puerto Rico, Inc.

53. In 1982, System Corporation de Puerto Rico requested a change of name to Gould S.E.L. Computer System Inc. de Puerto Rico, Inc.

54. In 1983, the Gould S.E.L. Computer System Inc. de Puerto Rico company requested to change its name to Gould Computer Systems Inc. de Puerto Rico, a wholly-owned subsidiary of Gould Computer System, Inc., a Florida corporation.

55. On December 23, 1985, Gould, Inc. filed a Certificate of Ownership and Merger with the Secretary of State of Delaware stating that Gould Computer System, Inc., a Florida corporation, had merged into Gould, Inc., a Delaware corporation.

56. By said merger, Gould, Inc. absorbed all assets and liabilities of Gould Computer System, Inc. and, among other things, became the parent of Gould Computer System, Inc. de Puerto Rico.

57. According to Encore Computer Corporation ("Encore")'s Form 10-K for the year ended on December 31, 1993, at p. 59: **in 1989**, Encore "acquired the assets and assumed the liabilities of Gould Electronics, Inc. (formerly Gould, Inc.) Computer Systems Division (the Computer Systems Business)."

58. Encore paid Gould, Inc. with its own stock for the acquisition of the Computer Systems Division

59. As a result of the merger and acquisition by which Encore acquired Gould Electronics, Inc. (formerly Gould, Inc.)'s Computer Systems Division, it assumed Gould, Inc.'s potential liability under CERCLA, including that related to SEL, Systems Corporation de Puerto Rico, Inc., both predecessors of Gould Computer Systems Division in Puerto Rico.

60. In 1998 Gores Technology Group acquired Encore, and renamed it Encore Real Time Computing, Inc.

61. In 2002, Compro Computer Services, Inc. ("Compro") acquired Encore Real Time Computing, with its accompanying legacy SEL/Gould resources and its liabilities, including that under CERCLA.

62. This was a private transaction and PRIDCO has been unable to find a Purchase Agreement.

63. Compro is organized under the laws of the State of Florida and its headquarters are located at 105 East Drive Melbourne, FL 32904.

64. Compro is the successor in interest of SEL and System Corporation de Puerto Rico, Inc.

65. As such, Compro is a PRP and liable under CERCLA for its predecessors' contamination of PRIDCO's property.

11

66. Because Compro's predecessors utilized and disposed chlorinated solvents such as those found in the contaminated groundwater beneath PRIDCO's property while they carried out their operations in the leased premises at the Site, Compro, as their successor in interest, is liable to PRIDCO for the recovery and reimbursement of costs imposed upon PRIDCO under CERCLA's §107(a).

## Beckman Coulter, Inc.

67. Equipo Médico Coulter de Puerto Rico, Inc., (the "Company") was a corporation organized under the laws of the State of Illinois on June 15, 1971.

68. On September 30, 1971, the Company filed the Certificate of Registration (No. 3740-F), with the Puerto Rico Department of State.

69. On February 8, 1973, the Company filed a Certificate of Amendment and changed its name to Coulter Chemistry, Inc.

70. According to the Foreign Corporation Report filed in 1974 with the Puerto Rico Department of State, Coulter Chemistry, Inc. was a wholly owned subsidiary of Coulter Electronics, Inc., as of March 31, 1974.

71. On the Foreign Corporation Report filed on 1976 the Company reported its intention to discontinue doing business in Puerto Rico as of September 30, 1976.

72. On November 12, 1976, Coulter Biochemical Corp., a corporation organized under the laws of Illinois on October 14, 1976, filed a Certificate of Registration (No. 4998-F) with the Puerto Rico Department of State.

73. According to the Foreign Corporation Report filed in 1980 with the Puerto Rico Department of State, Coulter Biochemical Corp. was a wholly owned subsidiary of Coulter Electronics, Inc., as of March 31, 1980. The company was not active during 1981.

74. As of March 31, 1979, Coulter Reagents, Inc., an Illinois Corporation, was a wholly owned subsidiary of Coulter Electronics, Inc., according to their Corporate Annual Report filed with the Puerto Rico Department of State.

75. Coulter Reagents, Inc., was authorized to do business in Puerto Rico (No. 3739-F) since September 30, 1971, under the name Reactivos Médicos Coulter de Puerto Rico, Inc. and officially changed its name to Coulter Reagents, Inc. on February 8, 1973.

76. The Delaware Branch of Beckman Instruments, Inc. filed a Certificate of Authorization to Do Business in Puerto Rico (No. 4219-F) with the Puerto Rico Department of State.

77. This Certificate of Authorization was cancelled in the Department of State on April 16, 2014.

78. In October 1997, Beckman Instruments, Inc. acquired all the outstanding capital stock of Coulter Corporation, a Delaware Corporation.

79. Through the October 1997 Stock Purchase Agreement Beckman Instruments, Inc. expressly and/or impliedly assumed Coulter Corporation environmental liability under CERCLA. In April 1998, Beckman Instruments, Inc. changed its name to Beckman Coulter, Inc. to reflect the acquisition of Coulter Corporation.

80. On October 15, 1999, Beckman Coulter, Inc. filed a Certificate of Authorization to do Business in Puerto Rico (No. 11,162-F) with the Puerto Rico Department of State.

81. Beckman Coulter, Inc. was cancelled and terminated doing business in Puerto Rico on April 16, 2014.

82. Beckman Coulter, Inc. is the successor in interest of Coulter Corporation and its wholly owned subsidiaries, including those who operated on premises leased from PRIDCO at the Site.

83. As such, Beckman Coulter, Inc. is in the same position as its predecessors for, among others, purposes of liability under CERCLA.

84. Because one or more of companies, including Coulter Electronics, Inc. and/or Equipo Médico Coulter de Puerto Rico, Inc. and/or, Coulter Reagents, Inc. and/or Coulter Chemistry, Inc. and/or Coulter Biomedical Corporation, utilized and disposed chlorinated solvents into the environment such as those found in the contaminated groundwater beneath PRIDCO's property while they carried out their operations in the leased premises at the Site, Beckman Coulter, Inc., as their successor in interest, may be liable to PRIDCO for the total or partial recovery and reimbursement of costs imposed upon it by the judgment of this court.

**Filtertek, Inc.**
**(a Division of Illinois Tool Works, Inc.)**

85. Filtertek, Inc. is the parent company of Filtertek de Puerto Rico, Inc., a corporation and wholly owned subsidiary created pursuant to the Laws of the State of Delaware and authorized to do business in Puerto Rico until 2005.

86. In 1977, Filtertek de Puerto Rico, Inc. assumed the Lease Contract between Coulter Chemistry and PRIDCO for property in its Maunabo Site. It continued doing business in Puerto Rico until 2005, when it requested that its status as a corporation authorized to do business in the Commonwealth of Puerto Rico be voluntarily cancelled.

87. Upon information and belief, Filtertek de Puerto Rico, Inc. utilized and disposed chlorinated solvents such as those found in the contaminated groundwater beneath PRIDCO's property while it carried out operations in the leased premises at the Site, Filtertek, Inc., as its successor in interest and/or warrantor may be liable to PRIDCO for the total or partial recovery and reimbursement of costs imposed upon it.

88. Its cancellation as a corporation authorized to do business in Puerto Rico did not eliminate the liability of its successor in interest under CERCLA for its contribution to the contamination of the groundwater under PRIDCO's property.

89. As such, Filtertek, Inc. is in the same position as its predecessor and wholly owned subsidiary for, among others, purposes of liability under CERCLA's §113(f).

**Insurance Companies A-J**

90. Insurance Companies A-J are currently unknown insurance companies duly authorized to do business in the Commonwealth of Puerto Rico or under foreign charters that have issued and had standing, valid insurance policies in favor of one or more of the Third-Party Defendants and/or their successors, which provide coverage for some or all of the liability imposed on PRIDCO and respond for all or part of the judgment in this case.

**FIRST CLAIM FOR RELIEF**

91. PRIDCO repeats and realleges each and every preceding paragraph and incorporates it by reference as if fully set herein.

92. The United States has incurred costs of response, within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25), to respond to the releases or threatened releases of hazardous substances at the Site and PRIDCO has been found liable for reimbursement of all costs incurred by the EPA.

93. Because one of the statutory triggers for a contribution claim has be4en met by the EPA's filing of its Complaint under section 107(a), PRIDCO is entitled to pursue the instant contribution claim under section 113(f)(1) of the statute 42 U.S.C. §9613(f)(1). Also because PRIDCO settled its liability with the United States in the action brought under §107(a).

94. PRIDCO claims that the Third-Party defendants should be found liable for reimbursement of costs to PRIDCO in the amount Defendant is liable under Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1).

95. As potentially responsible parties, each third-party defendant should be found liable for its equitable share of the contamination caused by the use of hazardous substances.

96. Pursuant to Section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f)(1), the Third-Party defendants are severally liable to PRIDCO for all costs incurred by and adjudged in favor of the United States and imposed upon PRIDCO as a result of the "Amended Final Judgment" in the proportion which the court deems to be appropriately equitable.

97. These costs for which PRIDCO seeks reimbursement in the present Second Amended Third-Party Complaint are currently estimated in an approximate amount not less than ELEVEN MILLION DOLLARS, plus interest at the annual rate of $3.50%.

## SECOND CLAIM FOR RELIEF

98. PRIDCO repeats and realleges each and every preceding paragraph and incorporates it by reference as if fully set herein.

99. Codefendants Insurance Companies A-Z have or had in effect policies in favor of Third-Party defendants providing coverage as successors in interest or warrantors of their predecessors and/or in favor of their predecessors for liability under CERCLA and actions such as those related herein.

100. Because of their insureds' liability under CERCLA as alleged in the instant Third-Party Complaint, they are liable to PRIDCO for contribution of their equitable share of enforcement and/or response and/or remediation costs which have been imposed upon it because of their status as operators of a facility from which a release of hazardous substances and

potentially responsible parties has caused PRIDCO to assume enforcement, response and remediation costs originally incurred by the EPA.

101. The names of Insurance Companies A-Z are currently unknown and once these are discovered the complaint will be amended to include their real identities.

102. These costs for which PRIDCO seeks reimbursement in the present Third-Party Complaint are currently estimated in an approximate amount not less than ELEVEN MILLION DOLLARS, plus interest at the annual rate of $3.50%.

### THIRD CLAIM FOR RELIEF

103. PRIDCO repeats and realleges each and every preceding paragraph and incorporates it by reference as if fully set herein.

104. Although CERCLA imposes joint and several liability on landowners and operators (tenants) alike, who may later seek contribution and/or allocation of liability, the right to indemnity arises when one party pays a joint obligation under the law for the actions of the joint tortfeasors.

105. Enforcement of contractual indemnity shifts the entire liability to the negligent or responsible parties, despite allocation or apportionment of liability among statutory jointly liable parties.

106. Contractually, PRIDCO secured the right to indemnity from its tenants such as Third-Party Defendants here. The tenants (and/or their successors or warrantors) named here as Third Party Defendants handled the hazardous substances, including TCE and/or PCE, that were released during the industrial operations of their predecessors on the Property and for which they are liable to PRIDCO.

107. As a result, the EPA incurred and will continue to incur response and remediation costs, as well as enforcement costs, in connection with the Site for which PRIDCO has been found liable, though it did not actively contribute in any form or manner to the release of hazardous

substances from the operations of the Third Party defendants that caused the EPA to incur in enforcement, response and remediation costs.

108.    PRIDCO was, in fact, held jointly liable for such release and the resulting environmental damages, under CERCLA. PRIDCO hereby demands specific performance of its tenants' duties under the indemnity and hold harmless clause, as well as under the law, for which they are contractually and legally responsible.

109.    Furthermore, under equitable indemnification, PRIDCO also seeks indemnification from the Third Party Defendants. Common Law indemnification allows a non- culpable party who has been compelled to make a payment to shift the entire burden of loss to the liable party and obtain from that party full reimbursement for its loss.

## DEMAND FOR JURY TRIAL

Third Party Plaintiff PRIDCO demands that all claims against the third party defendants be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

A.    Enter Judgment finding the Third-Party Defendants severally liable to PRIDCO in the equitable proportion the court deems proper for each;

B.    An Order for them to reimburse PRIDCO for all response costs, including enforcement costs, incurred by the United States and imposed upon PRIDCO as part of the Amended Final Judgment in connection with the Site in the approximate amount of ELEVEN MILLION DOLLARS, including interest thereon;

C.  Enter an Order for the Third-Party Defendants to respond for any future costs that may be levied against PRIDCO by the EPA to recover further response costs, including enforcement costs, plus interest thereon in the proportions the court determines to be equitable;

D.  Award PRIDCO its costs and fees in this Third-Party action; and

E.  Grant PRIDCO any other relief the Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 17th day of April, 2023.

**WE HEREBY CERTIFY** that this document has been filed on this date using the CM/ECF system which will send copy to each of the parties already having been served with process through their respective attorneys at their electronic addresses of record.

*Attorneys for Third-Party Plaintiff PRIDCO*



PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@plclawpr.com
jgonzalez@gonzalezmunozlaw.com
dianabatlle@gmail.com

*s/ JUAN J. CASILLAS-AYALA*
**USDC-PR No. 218312**

*s/ JUAN R. GONZÁLEZ MUÑOZ*
**USDC-PR No. 202312**

*s/ DIANA M. BATLLE-BARASORDA*
**USDC-PR No. 213103**